**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Lee GAROT,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Janell Ruth VAN Y,
Defendant-Appellant.**

Nos. 85–1673, 85–1675.

United States Court of Appeals,
Tenth Circuit.

Sept. 29, 1986.

Keith Ward, Asst. U.S. Atty. (Layn R. Phillips, U.S. Atty., with him on the brief), Tulsa, Okl., for plaintiff-appellee.

Richard Ravits, Tulsa, Okl., for defendants-appellants.

Before McKAY, MOORE, Circuit Judges, and SAM, District Judge.*

SAM, District Judge.

Robert Lee Garot and Janell Ruth Van Y appeal their jury conviction of mailing obscene matter in violation of 18 U.S.C. § 1461, importation or transportation of obscene matters in violation of 18 U.S.C. § 1462, and certain activities relating to material involving the sexual exploitation of minors in violation of 18 U.S.C. § 2252. The court sitting in the Northern District of Oklahoma suspended imposition of sentence, placed defendants on four years probation, and assessed costs of $50.00 on each count.

---

* Honorable David Sam, United States District Judge for the District of Utah, sitting by designation.

## Factual Background

On December 18, 1984, a United States Customs Canine Enforcement Officer working at a postal facility located in Houston, Texas, discovered the subject mailings while working with a dog specially trained for the purpose of detecting contraband entering the United States by mail. The dog alerted on a package to which were affixed Amsterdam, Netherlands postage stamps and a Customs Declaration label from "Nederlands Posteruren." The package, addressed to Mr. and Mrs. Sam Garot, 2464 South 128th East Avenue, Tulsa, Oklahoma, was larger and heavier than would be expected for its declared contents, two T-shirts and three towels. In addition, the package contained twenty-four magazines depicting extremely hard-core child pornography, including adolescent, pre-pubescent males and females in various nude poses with some pictures portraying sexual penetration of their bodies. The contents were then inventoried and prepared for a "controlled delivery" to the Tulsa address under the direction of the Customs Service and Postal Service. Upon acceptance of the package from the postal inspector who delivered it, defendant Janelle Van Y ("Van Y") stated, "We've been expecting that," and signed the postal receipt "Sam Garot." Defendants' house was then placed under surveillance until a search warrant was authorized.

Before commencing the search conducted by Agent Straba and two other special agents, Straba read defendants the *Miranda* Warnings, and defendants stated they understood their rights. The search of the residence revealed twenty-four child pornographic magazines in an unopened package next to a Christmas tree in the living room. In the master bedroom allegedly occupied solely by Garot, a total of forty-three pornographic movie films were found, thirteen of which were of pre-pubescent children engaged in sexual conduct. Also found in the bedroom was one letter-size envelope containing color pictures of children exposing their genitalia.

Van Y told the inspecting officers defendants received the package with the intention to mail it to a friend in California. The address and telephone number of the friend were found in an address book uncovered during the search.

The district court denied Van Y's motion to suppress evidence of her statement.

## Appellate Contentions

On appeal, Garot and Van Y contend the district court erred by (1) admitting into evidence statements made by Van Y to Agent Straba after he allegedly promised her leniency, (2) admitting into evidence government's Exhibits No. 2 and No. 4, (3) relying on cautionary instructions concerning Exhibits No. 2 and No. 4 to overcome prejudice to Van Y in the joint trial, and (4) denying defendants a severance of trials.

### I. Admission of Van Y's statements to Agent Straba.

At the hearing on defendant Van Y's Motion to Suppress,[1] Agent Straba testified the following occurred after the search was completed:

> I spoke to Ms. Van Y on one of her trips to the bathroom. When she was in the hallway, I was in the bedroom where the movies were discovered, and I spoke with her and told her that after we found the movies in the bedroom there—the child pornographic movies, that we had a very good case against her, and that it would be advisable—that she was going to be in big trouble, and it would be advisable if she talked to me about it.

M.Tr. 8. Denying he made Van Y any promises contingent upon her speaking to him or used on her any coercive tactics, Agent Straba testified, "I told her that if she spoke with us and told us the truth, told us exactly what was happening, and

---

1. This hearing will be denominated as "Motion Hearing," and references to the transcript "M.Tr. ___." The conference conducted in chambers will be denominated as "In Camera Hearing" and references to the transcript "C.Tr. ___." References to the trial transcript will be "T.Tr. ___."

what was—exactly the circumstances, that I would give that information to the Assistant United States Attorney." [2] *Id.* at 9. Van Y then said she wanted to talk to Garot, and the two were allowed to confer in the bathroom. After leaving the bathroom, Van Y entered the master bedroom with Detective Haroldson and Agent Straba and stated she was prepared to "tell" them, but she didn't know whether she should have an attorney. Agent Straba again recited the *Miranda* rights and advised her to call an attorney if she wanted one. Although she had access to the telephone, Van Y made no effort to contact counsel. *Id.* at 10.

Referring to Garot's recent heart by-pass operation, Van Y said she would take the blame because Bob (Garot) was not healthy enough to go to jail. *Id.;* T.Tr., Vol. II, 98. Van Y explained Garot received a call from his friend in California to whom he was to send the controlled delivery package, then she walked into the living room and returned with a red address book in which she pointed out the name, Norman Monte-Eaton, as the intended recipient of the package. T.Tr., Vol. II, 90.

██ On appeal, Van Y asserts the district court erred by admitting her statements into evidence because, in violation of her Fifth Amendment constitutional rights, Agent Straba coerced her to incriminate herself by promising leniency in return for her confession. Van Y contends she did not voluntarily waive her *Miranda* right to remain silent because she confessed as a result of fear and the belief she would be granted leniency.

In support of her contention, Van Y cites two United States District Court cases, *Hunter v. Swenson,* 372 F.Supp. 287 (W.D. Mo.1974) and *United States v. Williams,* 447 F.Supp. 631 (Del.1978). *Hunter* addressed facts similar to the instant facts in that a police officer informed the defendant he would relay to the prosecuting attorney all information concerning the defendant's cooperation. However, the officer went

further by reciting the nature of the charges that could be filed and conveying a message from the prosecutor setting out the possibility the defendant could be charged with a lesser offense if he would give a truthful statement and if he was not a principal in the criminal activity.

Holding that the officer's statements were not a promise of leniency, the *Hunter* court set out the governing standards of law for determining whether the defendant reasonably relied upon such promises to the abrogation of his constitutional rights:

> Considering the 'totality of the circumstances,' *Boulden v. Holman,* 394 U.S. 478, 480 [89 S.Ct. 1138, 1139, 22 L.Ed.2d 433] (1969); *Haynes v. Washington,* 373 U.S. 503, 513 [83 S.Ct. 1336, 1342, 10 L.Ed.2d 513] (1963), if [the] statement was ' "obtained by any direct or implied promises, however slight," ' *Bram v. United States,* 168 U.S. 532, 542 [18 S.Ct. 183, 186, 42 L.Ed. 568] (1897), the statement was not voluntary; or if [defendant] reasonably believed that a promise of leniency had been made to him, even though no such belief induced his statement, the statement was not voluntary, *Grades v. Boles,* 398 F.2d 409, 412 (4th Cir.1968); *United States v. Harris,* 301 F.Supp. 996, 99 (E.D.Wis.1969); *United States ex rel. Caserino v. Denno,* 259 F.Supp. 784, 790 (S.D.N.Y.1966).

*Id.* at 298. The court then listed the following four questions that flesh out these standards:

> First, was an express or implied promise of lenience made to [defendant]? Secondly, if no promise of lenience was made, did [defendant] reasonably believe that such a promise had been made? Thirdly, if a promise was made or if [defendant] reasonably believed that a promise had been made, was his statement induced by that promise in a 'but for' sense? Fourthly, if a promise was made or if [defendant] reasonably believed that a promise had been made, and this promise or belief induced his state-

---

**2.** Agent Straba testified he relayed the information concerning Van Y's cooperation to the Assistant United States Attorney who prosecuted the case. M.Tr. 9.

ment in a 'but for' sense, was the inducing promise coercive?

*Id.* In this case, as in *Hunter,* the record supports negative answers to these questions.

First, no express or implied promise of leniency was ever made to Van Y. Without mentioning specific charges or possible reductions, Agent Straba merely said Van Y could be in "big trouble," and if she were to tell the truth about what occurred, he would relay the information to the prosecutor. Nothing in that statement can be construed to be a promise of leniency, particularly when compared to the discussion of a possible plea negotiation the *Hunter* court determined did not meet the standards set out above.

Secondly, Van Y did not reasonably believe that a promise of leniency had been made to her. The logical extension of our determination that no such promise was ever made is that any belief Van Y might have entertained concerning leniency is unreasonable where no specific charges or possible reductions were discussed.

Thirdly, we cannot conclude Van Y would not have made her statements *but for* a real or imagined promise of leniency as she agreed to "take the blame" after citing as her overriding concern, the fear Garot could not withstand imprisonment because of his heart condition.

Fourthly, Van Y was not coerced to make her statements. As the *Hunter* court stated:

The question in 'plea bargaining' situations is not whether the guilty plea would have been made *but for* the promise of leniency, but whether the promise was coercive in nature, *i.e.* whether the accused was so gripped by the hope of leniency that he did not or could not freely and rationally choose among the available courses of action.

*Id.* at 300. That court condemned the mere *but for* test as overlooking the "narrower question of compulsion." *Id.* at 301.

For guidance on what constitutes the determinative "compulsion" or "coercion," we look to the second case cited, *United States v. Williams,* 447 F.Supp. 631. Rejecting the argument that *Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897), requires application of an "inflexible per se rule condemning any incriminating statement obtained as a result of a promissory inducement," the *Williams* court held that "the totality of the circumstances must be examined in order to evaluate the voluntariness of a statement." *Id.* at 637. That court then delineated a non-exhaustive list of factors including whether:

(1) defendant is in custody at the time of the statement; (2) defendant is alone and unrepresented by counsel; (3) the promise or inducement is initiated by prosecuting officials as opposed to defendant or someone acting on his behalf; (4) defendant is aware of his constitutional and other legal rights; (5) the potentially incriminating statement is part of an abortive plea bargain; (6) the promises or inducements leading to the statement are fulfilled by prosecuting authorities; and (7) defendant is subjected to protracted interrogation or evidence appears on the record to show that coercion precludes the statement from being knowing and intelligent.

*Id.* at 636, 637 (citations omitted). We find nothing in the record to persuade us Van Y was overborne or coerced as contemplated in these decisions. Neither Van Y nor Garot was in custody at the time the statements were made because they were not under arrest and were free to leave their home at any time during and after the search.[3] *United States v. Hall,* 421 F.2d 540 (2d Cir.1969), *cert. denied,* 397 U.S. 990, 90 S.Ct. 1123, 25 L.Ed.2d 398 (1970). Van Y contends she did not knowingly and

---

3. At trial, Agent Straba testified,

I advised them that I had a federal search warrant and that they were not under arrest, that we were going to serve the warrant, and at that point in time they sat down on the davenport, and I advised them that they were not free to wander through the house, but they were free to leave the residence.
T.Tr., Vol. I, 49.

intelligently waive her right to counsel; however, Agent Straba gave her the *Miranda* warnings given upon entry of the house, repeated them when she mentioned obtaining counsel, and encouraged her to telephone an attorney which she chose not to do. The record does not show Van Y was unaware of her constitutional rights. Regarding the issue of leniency, no plea negotiation was discussed and, as determined above, no promise made. Agent Straba fulfilled the one promise he did make, e.g., he related to the prosecutor the information concerning Van Y's cooperation. Finally, the record is devoid of any showing of protracted interrogation or coercion that would preclude the statement from being made knowingly and intelligently. After Agent Straba's remark concerning the conveyance of information, Van Y and Garot were free to confer in the privacy of the bathroom, following which conference, Van Y immediately volunteered the statements at issue. Clearly, the officers neither interrogated nor engaged in any activities that approached coercion of Van Y.

Accordingly, the district court did not commit error by admitting Van Y's statements concerning use of the mails for transportation of obscene materials.

II. *Admission of the Government's exhibits No. 2 and No. 4.*

 The exhibits in question were found in the closet of the bedroom allegedly occupied solely by Garot. Exhibit No. 2 is an envelope, postmarked in Sweden and addressed to Garot, that contained a brochure showing and describing a color slide of explicit child pornography, and Exhibit No. 4 is a box containing hard-core, eight-millimeter films of child pornography.

Garot and Van Y argue both exhibits should have been excluded under Rules 403 and 404(b) Federal Rules of Evidence.[4] Under Rule 403, they contend the exhibits were so inflammatory and repulsive that their admission created the danger the jury would convict defendants "not necessarily of the offenses with which they are charged but simply because they possess repulsive materials in their house." Appellants' brief at 7. Regarding the relevancy of the exhibits, appellants assert that because mere possession of child pornography is not unlawful,[5] the brochure and box of films offer no proof of the offense charged, e.g. use of the mails for the transportation of obscene matter. They claim the average juror would not distinguish the lawful act of possession of child pornography from the unlawful act of receiving it through the mail. *United States v. Beechum*, 582 F.2d 898 (5th Cir.1978) (referring to the danger the jury would convict defendant of an extrinsic offense rather than the offense charged, particularly when the extrinsic evidence could invoke strong emotional reaction).

---

4. Fed.R.Evid. 403 provides:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed.R.Evid. 404(b) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

5. Van Y and Garot admit the State of Oklahoma statutorily prohibits possession of child pornog-

raphy; however, they assert the United States Supreme Court's holdings in *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 113 (1982), and *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), take precedence over the Oklahoma statute. The *Ferber* Court upheld New York statutes forbidding the distribution of child pornography but did not address the constitutional questions of criminal liability arising from mere possession. Appellants raise as controlling authority on this point the *Stanley* holding that possession of pornography absent intent to distribute is not unlawful. However, the constitutionality of the Oklahoma statute is not at issue on this appeal, and where appellants were not charged with possession and Exhibits No. 2 and No. 4 were not admitted as evidence of other crimes, this Court need not extend discussion of the exhibits beyond its analysis under Rules 403 and 404(b).

The Government argues the district court did not abuse its discretion by admitting Exhibits No. 2 and No. 4 because they were offered solely to prove *scienter*, an element vital to its meeting the burden of proof in each offense charged. The mailer and the order forms postmarked in Sweden and filled out to Robert Garot, as well as the eight-millimeter films, were properly admitted under Rule 404(b) because they are relevant to knowledge of the contents of the package and absence of mistake in delivery, and therefore, probative of use of the mails for transportation of child pornography. Moreover, the exhibits were introduced as "other acts" rather than as the more prejudicial "other crimes" evidence.

Both parties correctly state that Rules 403 and 404(b) must be read together to determine whether admission of the exhibits would have unduly prejudiced Garot and Van Y. This Court must first look to Rule 404(b) to decide whether evidence of these other acts would be admissible for any purpose other than proving the character of appellants in order to show that they acted in conformity therewith. If admissible under Rule 404(b), we must then turn to Rule 403 to determine whether the probative value of the evidence is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

We agree with the Government's position that the exhibits were vital to proof of appellants' knowledge of the contents of the package and their intent on its receipt as well as to proof of the absence of mistake in the controlled delivery. Moreover, Exhibits No. 2 and No. 4 were particularly relevant to proof of *scienter* as required under 18 U.S.C. §§ 1462 and 2252 for offenses involving certain activities related to sexual exploitation of minors, because they show previous interest in child pornography. Clearly, Garot and Van Y, as defendants under a child pornography charge, unavoidably risked introduction of evidence that would offend the average juror. Their protection lay with the trial judge who alone had the opportunity to scrutinize all the fruits of the lawful search and minimize their potential impact on the jury by admitting only those exhibits necessary to prove the elements of each charge. We note the district court admitted the exhibits at issue only after a lengthy inspection conducted in chambers during which it carefully weighed the potential effects on the jury of all government exhibits and refused to admit several of those offered. T.Tr., Vol. I, 44–89. That court's primary concerns during the examination were precisely those articulated by appellants: the exhibits' relevancy to proving use of the mails and the possibility the jury would be inflamed by the material and convict Garot and Van Y for mere possession of child pornography, an offense not unlawful under federal statutes. We also note the parties stipulated Exhibit No. 4 contained hard-core child pornography, the jury did not view the eight-millimeter films, and the cautionary instruction that Exhibit No. 4 was to be considered solely as to Garot was first given when the prosecution read the stipulation to the jury. *Id.* at 67.

Therefore, we do not find the district court abused its discretion by admitting Exhibits No. 2 and No. 4 where it conducted an exhaustive review of all the evidence offered (including diligent inquiry on questions concerning relevancy and jury prejudice), issued timely, appropriate cautionary instructions, excluded many equally objectionable exhibits, and admitted only those necessary for the government to meet its burden of proving beyond a reasonable doubt each element of the three charges against Garot and Van Y.

III. *Adequacy of the court's cautionary instruction for protection of Van Y.*

█ In an effort to avoid prejudice to Van Y as a result of the introduction against Garot of evidence found in his closet, the district court issued the following cautionary instructions:

There are two defendants here on trial. And ladies and gentlemen, it does not follow from that fact alone that if one may be found guilty, both are guilty.

Each individual defendant is entitled to a fair consideration of the evidence in his defense and is not to be prejudiced by the fact, if it should become a fact, that you find against one of the co-defendants. Unless otherwise stated, all instructions given to you govern the case as to each defendant individually. You see and the court so advises that a separate crime or offense is charged by each separate count contained in the indictment. Each crime or offense as charged and the evidence applicable thereto should be considered separately. The fact you may find a defendant guilty or not guilty of one crime or offense should not control your verdict with reference to any of the other crimes or charges.

. . . .

Now, as to the government's exhibits number 2, 4, and 6 which the court admitted, these matters were admitted as found in the home of the defendants during the search of the home. You're instructed that these matters may be considered by you only as they may be evidence of knowledge and/or intent of a defendant of the contents, knowledge that person may have, of the contents of the box which was delivered December the 21st of 1984 and for no other purposes. And, in any event, such should be considered by you only in your consideration of the evidence regarding the defendant, Robert Lee Garot, and not considered as to the co-defendant.

T.Tr., Vol. II, 144, 145.

Van Y claims introduction of the evidence prejudiced her in a manner that could not have been overcome by the instructions. The government responds that the need for "savings in judicial resources" often necessitates joint trials and that the limits of what a co-defendant must endure are set by the Rule 403 analysis which the trial judge undertook with great care. Appellee's brief at 9. Both parties refer to *United States v. Figueroa* as controlling authority on the issue of admissibility of evidence against co-defendants in a joint trial. 618 F.2d 934 (2d Cir.1980). The Court in *Figueroa* addressed the issue as revolving on questions of severance and admissibility, as follows:

When evidence is offered against one defendant in a joint trial, determination of admissibility against that defendant resolves only the Rule 403 balancing as to him, *i.e.*, that the probative value of the evidence in *his* 'case' is not substantially outweighed by unfair prejudice to *him*. But if the evidence creates a significant risk of prejudice to the co-defendants, a further issue arises as to whether the evidence is admissible *in a joint trial*, even though limited by cautionary instructions to the 'case' of a single defendant. That issue can be considered either as a question of admissibility or severance. If the justification for a joint trial is out-weighed by the prejudice to the co-defendants, the trial court can confront the prosecutor with the choice of foregoing either the evidence or the joint trial. *See United States v. Glover*, 506 F.2d 291, 294 (2d Cir.1974); *United States v. Truslow*, 530 F.2d 257 (4th Cir.1975); *cf. Bruton v. United States*, 391 U.S. 123, 143–44; 88 S.Ct. 1620, 1631–32, 20 L.Ed.2d 476 (1968) (White, J., dissenting).

*Id.* at 944, 945 (emphasis in original). *Figueroa* further noted that sometimes "evidence is admitted against one defendant, leaving the issue as to the co-defendants to be resolved solely under the severance standards of Fed.R.Crim. p. 14." [6] *Id.* at 945.

---

**6.** Fed.R.Crim.P. 14 states:

If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trial of counts, grant a severance of defendants or

provide whatever other relief justice requires. In ruling on a motion by defendant for severance the court may order the attorney for the government to deliver to the court for inspection *in camera* any statements or confessions made by the defendants which the govern-

In this case, an *in camera* conference was held during which the district judge discussed with defense counsel, Mr. Ravits, the motion to sever which was brought the Friday before trial commenced the following Monday. Mr. Ravits said both defendants intended to testify and he believed their testimonies about the ownership of the controlled delivery package could be contradictory and therefore prejudicial. After further conversation concerning defendants' common defenses of lack of motive, knowledge, and intent, the district judge observed and Mr. Ravits agreed that the defense posture would be the same regardless of severance trials, whereupon Mr. Ravits voluntarily withdrew the motion.[7] C.Tr. 5, 6. We find defense counsel's decision to proceed with a joint trial was made after consideration of the potential effect of the evidence on the jury. Thus, upon resolution of the severance issue and in light of the above Rule 403 analysis as to the admissibility of the subject exhibits, the sole question remaining is whether the cautionary instruction given was sufficient to prevent undue prejudice to Van Y that might have resulted from the admission of the items found in Garot's closet.

Distinguishing the weight of admitting a confession from that of admitting evidence of other acts, the *Figueroa* Court said that "prior act evidence is not so inevitably prejudicial to co-defendants that the worth of limiting instructions can be totally discounted." *Id.*, at 946. However, that Court noted that limiting instructions are no guaranty against prejudice, *see e.g., United States v. Zane*, 495 F.2d 683, 694 (2d Cir.1974), and that

> [t]he risk of prejudice to a co-defendant from evidence of one defendant's prior acts depends on an assessment of how that evidence might affect the jury's con-

sideration of a co-defendant's guilt, despite limiting instructions. Of course, all prior acts evidence that tends to prove the guilt of one defendant might be viewed by the jury as bearing to some extent on the guilt of the co-defendants if the jury thought that the correctness of the prosecution's accusation against one defendant supported an inference that the prosecution may also be correct in its accusation against co-defendants. *But that possible inference is far too tenuous to bar admissibility of evidence in a joint trial.* An arguably more likely risk of prejudice might arise if the jury were simply to draw an adverse inference against the co-defendants because of their association with a defendant shown to have a prior criminal record. *That risk also seems too insubstantial in most circumstances to survive forceful instructions.*

*Id.* (emphasis added). After stating cautionary instructions were sufficient to protect a co-defendant in the two above-described scenarios, *Figueroa* referred to as an "extreme" example that raises a close question, the admission of a defendant's confession proving directly or by strong implication the co-defendant participated in the prior act. In the present case, no prior conviction is involved, and the evidence at issue clearly did not carry the weight of a confession. Any prejudice that Van Y might have suffered by the introduction of the exhibits appears to fall somewhere in the area of guilt by association discussed above, the inference of which is not strong enough to survive cautionary instructions. Van Y argues that admission of the exhibits created the implication she knew their contents because she shared the house with Garot; however, she had adequate opportunity at trial to set out her complete de-

---

ment intends to introduce in evidence at the trial.

7. The following dialogue occurred after Assistant United States Attorney Ward returned to the chambers area:

THE COURT: I have discussed this with Mr. Ravits, and I think he pretty well agrees with

me that he's in the same situation whether there's a severance or not a severance. And that's correct, isn't it? Isn't that the way you see it now?

MR. RAVITS: Yes.

THE COURT: So he, in effect, withdraws that request.

fense, and no contradictory testimony was offered. We note that perhaps the most damning evidence on the issue of Van Y's knowledge of the contents of the controlled delivery package were her statements, her use of the pseudonym "Sam Garot"[8] on signing for the package, and her general lack of shock or surprise at the discovery of the child pornography in her home.

"Evidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence" *Id.* at 943; *United States v. Briggs,* 457 F.2d 908, 911 (2d Cir.), *cert. denied,* 409 U.S. 986, 93 S.Ct. 337, 34 L.Ed.2d 251 (1972). We find insubstantial any prejudice that may have occurred to Van Y by the admission of the exhibits in question and rule the cautionary instructions provided her sufficient protection at trial by explicitly limiting the purposes for which the evidence could be considered.

### IV. *Severance of trials.*

As set out above, the district court did not rule on the issue of severance because Garot and Van Y voluntarily withdrew their motion to sever.[9] Therefore, the question of the propriety of their joint trial is not properly on appeal, and this Court need not address it further.

AFFIRMED.

---

8. Apparently "Sam Garot" is derived from combining Van Y's nickname "Sam" with Garot's surname. T.Tr., Vol. II, 86.

9. Appellants improperly characterize the withdrawal of their request for severance as the district court's denial of the motion to sever.