**UNITED STATES of America, Plaintiff,**

v.

**Thomas A. MORGAN, Defendant.**

**No. 95–40048–01–SAC.**

United States District Court,
D. Kansas.

Dec. 4, 1995.

Marilyn M. Trubey, David J. Phillips, Office of Federal Public Defender, Topeka, KS, Thomas A. Morgan, Jr., Lawrence, KS, for defendant.

Randy M. Hendershot, Office of United States Attorney, Topeka, KS, for plaintiff.

## MEMORANDUM AND ORDER

CROW, District Judge.

On June 28, 1995, the grand jury returned a ten count indictment charging the defen-

dant, Thomas A. Morgan, with mail fraud. The indictment alleges that Morgan, operating a business in Lawrence, Kansas, known as the Alden–Thomas Agency, convinced persons to pay a "professional services fee" in exchange for the opportunity to receive "grant" money from a three billion dollar pool of money. Morgan indicated that the pool of money came in part from "a boyhood friend, now rich and dying, who wanted MORGAN to oversee the disbursement of three billion dollars in philanthropic funds." In fact, no such pool of funds existed. Morgan is alleged to have used the money paid in as "professional service fees" to perpetuate the fraudulent scheme and for his own personal use.

This case comes before the court upon the following pretrial motions filed by Morgan:

 1. **Motion to suppress evidence (Dk. 16).**

 2. **Motion to suppress statement (Dk. 17).**

 3. **Motion for disclosure [of Fed. R.Evid. 404(b) evidence] (Dk. 14).**

The government has filed a response to each motion. *See* (Dk. 18, 19 and 20).

On October 12, 1995, the court held a hearing on the defendant's motions. At the close of the hearing, the court took the matter under advisement. The court, having considered the evidence presented, the briefs and arguments of counsel, and the applicable law, is now prepared to rule.

## 1. Motion to suppress evidence (Dk. 16).

Morgan argues that the warrant is invalid because it does not describe with particularity the things to be seized. Morgan argues that because the warrant provided no guidance to law enforcement officers as to what they may and may not seize, it was overbroad and invalid. The government responds, arguing that the search warrant was not so overbroad as to constitute a general warrant. During oral argument, the government essentially conceded that the warrant

was defective, but argued that the fruits of the search should not be suppressed under the good faith exception recognized in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

### Facts

On March 21, 1994, United States Postal Inspector Charles A. Puett submitted an affidavit to this court in application for a search warrant authorizing the search of Suites 206, 215 and 216 at 729½ Massachusetts, Lawrence, Douglas County Kansas, constituting the Alden–Thomas Agency. The affidavit submitted consists of twenty-seven pages, plus forty-one pages of attachments designated by the letters "A" through "P." Based upon its assessment that the affidavit provided probable cause, this court issued the search warrant sought by Inspector Puett.[1] In the portion of the warrant describing the property to be searched, the phrase "See attachment 1 hereto" appears. According to Inspector Puett's testimony during the October 12, 1995, hearing, he believed that "attachment 1" in the search warrant described his affidavit submitted in application for the search warrant.[2] Instead, the only document attached to the search warrant was a document titled *"Master List of Applicants in Order of Application,"* designated as "attachment A" in Inspector Puett's affidavit submitted in application for the search warrant. The list contains the names of the principal operators, employees, agents, clients and business associates of The Alden–Thomas Agency, Alden–Thomas Marketing and Management, the Money Club, the Jodoni Registry Incorporated and Distribution Service International—essentially the names of persons or entities whose transaction records were relevant to the criminal investigation of Thomas Morgan. The list does not otherwise describe the property to be seized during the execution of the search warrant.

Inspector Puett and other law enforcement officers executed the search warrant on March 23, 1994. The search warrant inventory sheets total sixteen pages. The vast

---

1. Morgan does not argue that there was not probable cause to issue the search warrant.

2. The affidavit submitted in application for the search warrant describes in substantial detail the property sought to be seized which might be evidence of mail fraud.

majority of the items seized during the execution of the search warrant were items clearly related to the investigation of mail fraud and were materials sought in Inspector Puett's affidavit—mail, lists of clients, business records, bank records, cash, computer equipment, etc ... Inspector Puett testified that he was unaware that the search warrant was in any way defective at the time that he and other law enforcement officers executed the search warrant.

### Particularity

■ "Under the Fourth Amendment, every warrant must 'particularly describ[e] the place to be searched, and the persons or things to be seized"—a requirement that prevents a 'general exploratory rummaging in a persons belongings.'" *United States v. Emmons*, 24 F.3d 1210, 1216 (10th Cir.1994). "The Fourth Amendment requires warrants to describe particularly the things to be seized, so that 'nothing is left to the discretion of the officer executing the warrant.'" *United States v. Robertson*, 21 F.3d 1030, 1033 (10th Cir.1994) (quoting *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 511–12, 13 L.Ed.2d 431 (1965) (quoting *Marron v. United States*, 275 U.S. 192, 48 S.Ct. 74, 72 L.Ed. 231 (1927))). "A search 'is confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause.'" *Robertson*, 21 F.3d at 1033 (quoting *Voss v. Bergsgaard*, 774 F.2d 402, 404 (10th Cir.1985)).

■ "The test applied to the description of the items to be seized is a practical one." *United States v. Janus Industries*, 48 F.3d 1548, 1554 (10th Cir.1995).

In general, a warrant is sufficiently specific if it "enables the searcher to reasonably ascertain and identify the things authorized to be seized." *United States v. Wolfenbarger*, 696 F.2d 750, 752 (10th Cir. 1982) (quoting *United States v. Wuagneux*, 683 F.2d 1343, 1348 (11th Cir.1982), *cert.*

*denied*, 464 U.S. 814 [104 S.Ct. 69, 78 L.Ed.2d 83] (1983)). However, even a "warrant that describes items to be seized in broad and generic terms may be valid if the description is as specific as circumstances and nature of the activity under investigation permit." *United States v. Harris*, 903 F.2d 770, 774 (10th Cir.1990). *Robertson*, 21 F.3d at 1033. "Even if generic descriptions are necessary, however, 'the fourth amendment requires that the government describe the items to be seized with as much specificity as the government's knowledge and circumstances allow, and warrants are conclusively invalidated by their substantial failure to specify as nearly as possible the distinguishing characteristics of the goods to be seized." *Id.* (quoting *United States v. Leary*, 846 F.2d 592, 600 (10th Cir.1988)) (quoting *United States v. Fuccillo*, 808 F.2d 173, 176 (1st Cir.), *cert. denied*, 482 U.S. 905, 107 S.Ct. 2481, 96 L.Ed.2d 374 (1987)). "As an irreducible minimum, a proper warrant must allow the executing officers to distinguish between items that may and may not be seized." *Leary*, 846 F.2d at 602.

■ In evaluating the sufficiency of the warrant, the court should "read together all properly incorporated or referenced components of the warrant, including the attached application and affidavit." *United States v. Occhipinti* 998 F.2d 791, 799 (10th Cir.1993).[3] "The knowledge of the executing officer can be considered in determining the sufficiency of the description." *Id.*

### Analysis

■ In the case at bar, the warrant does not specifically describe the items to be seized. Instead, the search warrant apparently lists the names of persons and entities whose records are to be seized. The warrant itself does not, however, set forth general classes of items to be seized, *i.e.*, records, money, postage materials, etc..., that are properly subject to seizure by the executing

---

3. However, the court may not consider the contents of the warrant application or its accompanying affidavit to cure a defective warrant unless (1) the affidavit and search warrant are physically connected so they constitute one document; *and* (2) the search warrant expressly refers to the affidavit and incorporates it by reference using suitable words of reference. *United States v. Williamson*, 1 F.3d 1134, 1136 n. 1 (10th Cir. 1993) (quoting *United States v. Leary*, 846 F.2d 592, 603 (10th Cir.1988) (quoting 2 Wayne R. LaFave, Search and Seizure § 4.6(a), at 241 (2d ed. 1987))).

officers. Although the affidavit submitted in application for the search warrant specifically sets forth the types of materials sought, the affidavit was not physically attached to the search warrant. Under the legal standards set forth above, the warrant apparently does not meet the particularity requirements imposed by the fourth amendment. The disposition of Morgan's motion therefore turns on whether the fruits of the search are admissible under the good-faith exception articulated in *Leon.*

In *Leon,* "the Supreme Court announced an exception to the exclusionary rule, providing that evidence seized under a warrant later found to be invalid may be admissible if the executing officers acted in good faith and with reasonable reliance on the warrant." *United States v. Dahlman,* 13 F.3d 1391, 1397 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1575, 128 L.Ed.2d 218 (1994).

As the Supreme Court stated in *Leon,* "the suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." *Id.,* 468 U.S. at 918, 104 S.Ct. at 3418. Moreover, it is clear that an "officer's reliance on the magistrate's ... determination ... on the technical sufficiency of the warrant he issues must be objectively reasonable, and it is clear that in some circumstances the officer will have no reasonable grounds for believing the warrant was properly issued." *Id.* at 922–23, 104 S.Ct. at 3420 (citations and footnotes omitted).

In determining whether the *Leon* exception should be applied, the

> "good faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known the search was illegal despite the magistrate's authorization." ... To answer this "objectively ascertainable question," we are to consider "all of the circumstances," and assume that the executing "officers have a reasonable knowledge of what the law prohibits."

*Leary,* 846 F.2d at 607, quoting *Leon,* 468 U.S. at 919, 922, 104 S.Ct. at 3418, 3420. *Dahlman,* 13 F.3d at 1397. The good faith exception recognized in *Leon* may save a warrant deficient for lack of particularity. *See Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984).

In this case, the court concludes that the fruits of the search are admissible under the exception recognized in *Leon.* At the time that Inspector Puett applied for the search warrant, it was his expectation and the court's intent to incorporate Inspector Puett's affidavit into the search warrant and to physically attach the affidavit to the search warrant. Instead, by inadvertence, only a portion of the exhibits submitted in application for the search warrant were attached to the search warrant. Under these circumstances, Inspector Puett could have reasonably believed that the search warrant he was executing properly incorporated the affidavit submitted in application for the search warrant. *See Sheppard,* 468 U.S. at 989–991, 104 S.Ct. at 3428–3429.

Moreover, Inspector Puett knew that the affidavit submitted for the search warrant authorized the search for records and evidence of mail fraud. The officers executing the search warrant did not engage in a general, exploratory search. Instead, the items seized during the search were basically the items described in Inspector Puett's affidavit.

In short, under the circumstances of this case, exclusion of the evidence would not further purposes of the exclusionary rule. Morgan's motion for suppression of the evidence is denied.

**2. Motion to suppress statement (Dk. 17).**

Morgan seeks an order suppressing from evidence statements he allegedly made to Postal Inspector Charles Puett on March 30, 1994, for the reason that (1) the statements were obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); and (2) that the statements were not voluntarily made. Morgan apparently voluntarily met with Postal Inspector Puett at Inspector Puett's office to obtain some files from his computer which

Postal Inspectors had in their possession as a result of executing the search warrant. Before allowing Morgan access to the computer,[4] Postal Inspector Puett asked Morgan if he would answer a couple of questions, which Morgan agreed to do. According to Morgan, the couple of questions turned into a ten hour custodial interrogation. Inspector Puett surreptitiously recorded the interview. Morgan's brief indicates that he was not read the *Miranda* warnings, that his attorney's requests to speak with Morgan were denied on two occasions, and that Morgan's own request to speak with his attorney was denied. Morgan claims he did not eat during the ten hours.

Morgan contends[5] that the statements he made were not voluntary but instead the product of Postal Inspector Puett's threats and promises of leniency. According to Morgan, he was extremely tired and confused by the end of the interview. By the end of the interview, Morgan had apparently signed a statement and a "stop mail order." Morgan also signed an incriminating statement, which according to Morgan, did not reflect his version of the truth, but instead, was Inspector Puett's version of the truth.

The government responds, indicating that Morgan was never in custody, was free to leave at any time during the interview, that he was offered food and drink, that he was allowed to take unescorted trips to the bathroom, and that he was not offered any improper inducement or that he was threatened. The government also denies that Morgan was denied access to his attorney. The government's brief indicates that his attorney was informed that Morgan was being interviewed at the Kansas City office. The government contends that Morgan's decision to speak was voluntary and the product of his desire to obtain some of his property, "and that the present motion is the result of hindsight and regret and should not be granted."

Inspector Puett testified that he never read Morgan the *Miranda* warnings because it was unnecessary in his opinion because Morgan was never in custody. Inspector Puett did not inform Morgan of the telephone calls from his attorney because he is not required to do so. *See Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (police officers' failure to inform suspect that his attorney was attempting to reach him does not violate *Miranda* or the Fifth Amendment). During the interview, Inspector Puett indicated to Morgan that although he could not "make any promises," the United States Attorney might "[w]ork a deal" if Morgan cooperated by confessing to mail fraud and expressing remorse for his actions. Inspector Puett indicated, however, that the "offer is only good today."

### Miranda

In *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966), the Supreme Court held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *See United States v. Erekson*, 70 F.3d 1153 (10th Cir. 1995).

██ "[T]wo requirements must be met before Miranda is applicable; the suspect must be in 'custody,' and the questioning must meet the legal definition of 'interrogation.'" *United States v. Ritchie*, 35 F.3d 1477, 1485 (10th Cir.1994) (quoting *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir.1993)).

### Custody

██ "A person is "in custody" for the purposes of *Miranda* if he "has been deprived of his freedom of action in any significant way," *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612, or his freedom of action has been

---

4. Apparently due in part to the length of the interview, Morgan was not provided with access to his computer on March 30, 1994. Morgan was, however, given his music compact disks which had been seized during the execution of the search warrant.

5. Morgan did not testify at the October 12, 1995, hearing. Instead, Morgan submitted a written statement dated March 31, 1994, which recounts his version of the March 30, 1994, interview.

**1348**

curtailed to a "degree associated with a formal arrest," *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) (per curiam)." *Ritchie*, 35 F.3d at 1477. "A person has been taken into police custody whenever he 'has been deprived of his freedom of action in any significant way.' " *United States v. Perdue*, 8 F.3d 1455, 1463 (10th Cir.1993) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966)). "The only relevant inquiry is 'how a reasonable man in the suspect's position would have understood his situation.' " *United States v. Robertson*, 19 F.3d 1318, 1321 (10th Cir.1994) (quoting *Perdue*, 8 F.3d at 1463) (quoting *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 3151, 82 L.Ed.2d 317 (1984)), *cert. denied*, —— U.S. ——, 115 S.Ct. 271, 130 L.Ed.2d 189 (1994). In deciding this issue, the court may consider whether agents restrained the defendant's liberty by means of physical force or show of authority. *See United States v. Pena*, 920 F.2d 1509, 1515 (10th Cir.1990), *cert. denied*, 501 U.S. 1207, 111 S.Ct. 2802, 115 L.Ed.2d 975 (1991).

There are some instances where police detention and questioning of criminal suspects do not amount to custodial interrogation requiring *Miranda* warnings. Traditionally *Miranda* warnings are not required in stops pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), because "the typical police-citizen encounter envisioned by the Court in *Terry* usually involves no more than a very brief detention without the aid of weapons or handcuffs." *Perdue*, 8 F.3d at 1464. However, where the police find it necessary to employ an amount of force in a Terry stop that is beyond the ordinary, they can create "the 'custodial' situation envisioned by *Miranda* and its progeny." *Id.* We thus clarified in *Perdue* that *Miranda* warnings may be required before a suspect is actually arrested.

*Id.*

**Interrogation**

 For purposes of *Miranda*, interrogation "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally at-

tendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980).

**Right to Counsel**

 "An accused's Fifth Amendment right to counsel attaches when he invokes that right during a custodial interrogation." *United States v. Johnson*, 42 F.3d 1312, 1318 (10th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1439, 131 L.Ed.2d 318 (1995). "Once an attorney is requested, all questioning must cease until counsel is provided unless the right to counsel is waived." *Id.*

**Voluntariness of Defendant's Statements**

 Even if a defendant's *Miranda* rights are not violated, his statements may nevertheless be inadmissible if they were not made voluntarily. *See Erekson*, 70 F.3d 1153. "The voluntariness of a confession is determined by considering the totality of the circumstances in which it was made." *Perdue*, 8 F.3d at 1466 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)). To determine voluntariness, the court must ask:

Is the confession the product of an essentially free and unconstrained choice by its maker? If it is, if he has willed to confess, it may be used against him. If it is not, if his will has been overborne and his capacity for self-determination critically impaired, the use of his confession offends due process.

*Perdue*, 8 F.3d at 1466 (quoting *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961)). In considering whether the confession or statement is one of free will, the courts look to several factors, including: the age, education, and intelligence of the defendant; the length of detention and questioning; whether *Miranda* warnings were given; the defendant's physical and mental characteristics; and the location of the questioning. *U.S. v. Chalan*, 812 F.2d 1302, 1307 (10th Cir.1987); *see U.S. v. Short*, 947 F.2d 1445, 1449 (10th Cir.1991), *cert. denied*, 503 U.S. 989, 112 S.Ct. 1680, 118

L.Ed.2d 397 (1992). "The court must also consider the conduct of the police officers." *Perdue,* 8 F.3d at 1466. "In no case, however, is any single factor determinative." *Chalan,* 812 F.2d at 1307.

## Promises of Leniency

■ In *United States v. Garot,* 801 F.2d 1241, 1244 (10th Cir.1986), relying on *Hunter v. Swenson,* 372 F.Supp. 287, 298 (W.D.Mo.), *aff'd,* 504 F.2d 1104 (8th Cir.1974), *cert. denied,* 420 U.S. 980, 95 S.Ct. 1410, 43 L.Ed.2d 662 (1975), the Tenth Circuit listed the following questions as relevant in addressing a claim that a confession was unconstitutionally coerced by a promise of leniency:

(1) Was an express or implied promise of lenience made to the defendant?

(2) If no promise of lenience was made, did the defendant reasonably believe that such a promise had been made?

(3) Was the defendant's statement induced by either the promise or his reasonable belief that a promise had been made?

(4) Was the inducive promise coercive?

*See Stohler v. Hargett,* No. 92–5040, 1993 WL 78782, 1993 U.S.App. LEXIS 5599 (10th Cir. March 18, 1993) (same).

■ For guidance on what constitutes coercion, the court looked to *United States v. Williams,* 447 F.Supp. 631, 636 (D.Del.1978), which rejected an inflexible per se rule that condemns any incriminating statement obtained as a result of promissory inducement. Instead, the court applied a totality of the circumstances test, which considers these non-exhaustive list of factors including whether:

(1) defendant is in custody at the time of the statement;

(2) defendant is alone and unrepresented by counsel;

(3) the promise or inducement is initiated by prosecuting officials as opposed to defendant or someone acting on his behalf;

(4) defendant is aware of his constitutional and other legal rights;

(5) the potentially incriminating statement is part of an abortive plea bargain;

(6) the promises or inducements leading to the statement are fulfilled by prosecuting authorities; and

(7) defendant is subjected to protracted interrogation or evidence appears on the record to show that coercion precludes the statement from being knowing and intelligent.

*Garot,* 801 F.2d at 1245 (citing *Williams,* 447 F.Supp. at 636–37). When a government agent informs the defendant that he can make no deals, but promises that the defendant's cooperation will be made known to the United States Attorney's office, such limited assurances do not render the defendant's statements involuntary. *United States v. Lewis,* 24 F.3d 79, 82 (10th Cir.1994).

## Burden of Proof

■ "The prosecution has the burden of establishing by a preponderance of the evidence that a suspect waived his *Miranda* rights, and that his confession is truly the product of free choice." *United States v. Anderson,* 929 F.2d 96, 99 (2nd Cir.1991); *see United States v. Muniz,* 1 F.3d 1018, 1021 (10th Cir.1993) ("The burden of proof is on the government to prove the statements were voluntary."), *cert. denied,* —— U.S. ——, 114 S.Ct. 575, 126 L.Ed.2d 474 (1993).

## Analysis

■ At the outset, it appears that the parties view Morgan's motion to suppress as a more or less, all-or-nothing proposition— either all of the statement's Morgan made on March 30, 1995, to Inspector Puett are admissible or none of them are admissible. Having considered the evidence admitted, including the testimony of Inspector Puett and a transcript of the March 30, 1995, interview, the court does not share this view. As the government suggests, Morgan voluntarily came to Inspector Puett's office in an effort to obtain some of his property seized during the execution of the search warrant. Morgan's statements to Inspector Puett at that time, and apparently for several hours thereafter, were not the product of a custodial interrogation or coercive government tactics. In fact, Inspector Puett on two occasions expressly informed Morgan that he was not

under arrest and that Morgan was free leave. However, during the course of the ten-hour meeting, the tenor and nature of the interview slowly evolved from a voluntary encounter into a custodial interrogation. In addition, Inspector Puett's questions and comments materially misstated the law, contributing to the court's conclusion that Morgan's subsequent responses were not voluntary.[6]

Based upon its careful consideration all of the facts and circumstances surrounding the March 30, 1994, interview, the court concludes that all of Morgan's statements made subsequent to page 12 of exhibit M2, a partial transcript of the March 30, 1994, interview, are not admissible at trial for any purpose. *See United States v. Guerro*, 983 F.2d 1001, 1003 (10th Cir.1993) ("A coerced or involuntary statement, which violates a suspect's rights under the Fifth Amendment, is not admissible at trial for any purpose."). Prior to the criminal investigation of his "philanthropic" enterprise, Morgan apparently had little experience with the criminal justice system. At page 12 of the transcript, Inspector Puett asks Morgan to "play for a minute that I'm a Federal Judge." Subsequent to that point in time, Inspector Puett, *inter alia*, incorrectly suggests that Morgan, as a defendant in federal court, would not be permitted to exercise his right to remain silent, *i.e.*, that Morgan would be required to testify in his own defense at his criminal trial. Obviously, this is a patent misstatement of federal constitutional law. At no subsequent point in time did Inspector Puett make any attempt to correct his misstatement of the law.[7] Noticeably absent from

the government's brief or arguments to the court is any suggestion that Inspector Puett's statements regarding the Fifth Amendment were a correct statement of constitutional law. Nor does the government endeavor to specifically address the impact of those statements in analyzing the voluntariness of Morgan's subsequent statements. After this point in the interview, Morgan began a steady retreat from his position that nothing he told his clients was false or misleading.

Inspector Puett's apparent mischaracterization of the law is followed by several other statements and events which demonstrate that suppression of the statements from the point in time chosen by the court is appropriate. It is clear that by that time in the marathon interview, both Inspector Puett and Morgan were very tired from the rigors of the day. Morgan apparently had no food to eat and only soda pop to drink. Morgan was, however, permitted, on at least one occasion, to leave the interview room to make an unescorted trip to the bathroom. Although the government correctly argues that Inspector Puett was subject to some of the same physical and mental demands as Morgan during the ten hour interview, Inspector Puett knew that he as an absolute certainty that he could terminate the interview at any point that he chose. Inspector Puett also knew that he was not the subject of a criminal investigation.

 Although mere exhortations to tell the truth are not sufficient to render a defendant's statements involuntary, *see Chalan*, 812 F.2d at 1305, Inspector Puett repeatedly

---

6. "Although '[p]loys to mislead a suspect or to lull him into a false sense of security that do not rise to the level of compulsion or coercion to speak are not within *Miranda's* concerns,' *Illinois v. Perkins*, 496 U.S. 292, 297, 110 S.Ct. 2394, 2397, 110 L.Ed.2d 243 (1990), the Supreme court has found that affirmative misrepresentations by the police may be sufficiently coercive to invalidate a suspect's waiver of the Fifth Amendment privilege." *United States v. Anderson*, 929 F.2d 96, 100 (2nd Cir.1991). "Trickery does not make it impossible *per se* to find that a defendant voluntarily waived his rights." *Id.* at 100.

7. Inspector Puett's mischaracterization of the operation of the fifth amendment may have been inadvertent. Inspector Puett may have been at-

tempting to explain a more intricate aspect of the fifth amendment and its interplay with the Federal Rules of Evidence—such as the fact that a defendant "who testifies waives his Fifth Amendment privilege in all areas subject to proper cross-examination." *United States v. Ellis*, 951 F.2d 580, 584 (4th Cir.1991); *see United States v. Bump*, 605 F.2d 548, 552 (10th Cir.1979) ("A defendant may not use the Fifth Amendment to restrict cross-examination on matters reasonably related to those brought out on his direct examination."). Nevertheless, a fair interpretation of Inspector Puett's statements could have reasonably suggested to Morgan that a defendant in federal court would at some point be required to testify in his own defense.

badgered Morgan during the ten hour interview to tell the truth, *i.e.,* to confess to mail fraud, and repeatedly told Morgan that he did not believe Morgan's version of the facts. Inspector Puett told Morgan not to interrupt him during the interview. Inspector Puett repeatedly told Morgan that he was in hot water. Inspector Puett told Morgan that he needed to "unload this" and to "unshackle" himself. Inspector Puett also told Morgan that "the truth will set you free."

After the time that Inspector Puett misstated the law regarding the fifth amendment, Inspector Puett told Morgan that "there's a couple of orders of business that we need to take care of before we break this off today." Inspector Puett stated that he needed Morgan to make a written statement/confession and to sign a voluntary agreement to discontinue receiving mail. At that point, Morgan could reasonably have believed that he was not free to leave until he complied with Inspector Puett's request. In regard to the discontinuance of receiving mail, Morgan indicated that he wanted to discuss the issue with his attorney. Morgan ultimately complied with Inspector Puett's instructions by providing a written statement and by signing a mail stoppage form without seeking the advice of an attorney. After providing Inspector Puett with the information, Morgan was released.

Under the totality of these circumstances, the court concludes that Morgan's statements made after page 12 of exhibit M2 were not voluntary. In reaching this conclusion, the court has carefully considered the Supreme Court's pronouncement that "[c]onfessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence." *Miranda,* 384 U.S. at 478, 86 S.Ct. at 1630. However, under the particular circumstances of this case, the court finds that the government has fallen short of meeting its burden of proving that Morgan's statements were voluntary. The length of the interview/interrogation, coupled with Inspector Puett's statements and conduct during the interview/interrogation convince the court that Morgan's statements during the latter part of the interview were not voluntary, but instead the product of coercion during a custodial interrogation. Consequently, suppression is appropriate.

**3. Motion for disclosure [of Fed.R.Evid. 404(b) evidence] (Dk. 14).**

Morgan seeks an order directing the government to disclose evidence it plans to introduce pursuant to Rule 404(b). The government responds, indicating that it is unaware of any criminal convictions or arrests that it would seek to introduce. The government also reserves the right to offer certain other evidence which it apparently characterizes as Rule 404(b).

In light of the government's response, the defendant's motion for disclosure of Rule 404(b) evidence is denied as moot.

IT IS THEREFORE ORDERED that Morgan's Motion to suppress evidence (Dk. 16) is denied.

IT IS FURTHER ORDERED that Morgan's Motion to suppress statement (Dk. 17) is granted in part and denied in part as set forth in the body of this opinion.

IT IS FURTHER ORDERED that Morgan's Motion for disclosure [of Fed.R.Evid. 404(b) evidence] (Dk. 14) is denied as moot.