F I L E D
United States Court of Appeals
Tenth Circuit

AUG 17 1998

PATRICK FISHER
Clerk

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

No. 97-5121

WILLIAM RILEY SIMPSON,

Defendant - Appellant.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA
(D.C. NO. 97-CR-29-K)**

Shannon K. Davis, Tulsa, Oklahoma, for Appellant.

Neal B. Kirkpatrick, Assistant United States Attorney (Stephen C. Lewis, United States Attorney, with him on the brief), Tulsa, Oklahoma, for Appellee.

Before **ANDERSON, MAGILL,**[*] and **KELLY**, Circuit Judges.

**ANDERSON**, Circuit Judge.

---

[*]Honorable Frank J. Magill, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

William Riley Simpson appeals his jury conviction on two counts of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2). The conviction was based on images stored in computer files which were obtained during the execution of a search warrant. He contends that (1) the search warrant was improperly obtained and executed; (2) the court admitted improper evidence and testimony; (3) the evidence was insufficient to support the conviction; and (4) the court abused its discretion in denying a continuance of the trial. We affirm.

## I. BACKGROUND

On March 11, 1996, Detective Steve Johnson of the Tulsa Police Department obtained a warrant to search Simpson's house for child pornography. He subsequently executed the warrant, during which Simpson's entire computer, 18 diskettes, 19 videotapes, and various documents were seized.

On March 7, 1997, an indictment was filed against Simpson, charging him with two counts of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2). Simpson filed a motion to suppress all evidence seized pursuant to the search warrant, which, following a hearing, was denied. The government provided Simpson with a copy of the seized computer and disks on April 18, 1997. In a pretrial conference held on May 14, 1997, the court set the trial date for May 19, 1997. Shortly after the pretrial conference, counsel for Simpson

finally located an expert witness to testify on Simpson's behalf, but because he was going to be out of the country until June 23, 1997, Simpson moved for a continuance. The court denied the continuance, but because of a conflict on the court's schedule, the trial was delayed until May 27, 1997.

At trial, the government's evidence was almost entirely circumstantial. Agent Rehman testified that he had a "conversation" under the assumed name of "FlaHawk" in a chat room called "Kidsexpics" with an individual identified as "Stavron" who said that his name was "B. Simpson" and who gave a street address and e-mail address. Appellant's App. Vol. II at 147-63. Other witnesses testified that both the street and e-mail addresses belonged to the Defendant, Bill Simpson. See id. at 197-98; Vol. III at 382. Agent Rehman and the individual discussed several items of child pornography in lurid detail and the individual identifying himself as B. Simpson indicated that he possessed many images of child pornography. Id. Vol. II at 155-59. The two also made a deal that the individual would send Rehman a check for $30 and a floppy disk containing numerous pornographic images of children under age 13 and in return, Rehman would send a video tape containing sexual interactions between a twelve year-old girl and a sixteen year-old boy. Id. at 157-63. A printout of this conversation was admitted as evidence and published to the jury. Id. at 152-54. Agent Rehman testified that through a series of e-mails from the given e-mail address,

the individual backed out of the deal because he was afraid of using the U.S. mail, so nothing was ever sent.    Id. at 164-66.  Agent Rehman also was qualified as an expert witness on computer terms and usages and testified about the process of transferring files over the Internet.    Id. at 171-73.

Detective Johnson testified that    he had verified that a Bill Simpson lived at the street address given to Agent Rehman and prepared an affidavit for a search warrant of that address.    Id. at 197-98.  Detective Johnson and other officers executed the warrant and seized many things, including a computer, disks, and several papers located near the computer.    Id. at 198-220.  The papers contained the name "FlaHawk" and the name, street address, and e-mail address that Agent Rehman had given the individual in the chat room.    Id. at 211.

Timothy Ogiela, a computer specialist with the FBI, testified that he made an exact copy of the seized computer's hard drive and placed that copy on another computer's empty hard drive.    Id. at 267-72.  He also testified that the files on the seized computer's hard drive were highly organized.    Id. at 273-74.

Neil Walters, a Tulsa Police Department Detective who was present during the execution of the search warrant, testified that he copied the seized hard drive onto another hard drive and then copied that onto a CD-ROM.    Id. at 281-84. From that CD-ROM and two floppy disks, Detective Walters then showed the jury four "avi" files, which consisted of short digital videos, and eleven "jpg" files,

which consisted of still images.    Id. at 288-94.  Two of the jpg files that were shown were the files that formed the basis of the two counts of the indictment and the remaining jpg files and the avi files were permitted by the court pursuant to Fed. R. Evid. 404(b).  All of the files contained graphic depictions of children engaged in sexual activities, and the judge required that each image be displayed only for a few seconds.    Id. at 259.

The prosecution recalled Agent Rehman, who was then accepted by the court as an expert on the use of computers and investigating child exploitation and pornography.    Id. Vol. III at 346.  He testified how many of the individuals who use computers to view child pornography name the files and organize them on their computers.    Id. at 350-52.  He also went through the list of directories on the seized computer's hard drive and explained what the directory names could mean.  Id. at 354-58.  Agent Rehman then explained that in his experience the fact that the dates differed on the file transfer protocol ("ftp") log and on the files found on the seized computer is not uncommon because people downloading through the Internet typically receive copies of files they already have, so they then delete the duplicates.    Id. at 359-62.  He also testified that his experience has shown that a child pornography file with a complex name generally contains the same image no matter where he has found them on the Internet, and he expressed

his opinion that the files downloaded through the Internet at a site in Boston were the same as the ones located on the seized computer. Id. at 362-63.

Next, Jeff Bewley, the Server Administrator for an Internet service provider testified that the ftp log found on the seized computer indicated a transfer of files named "doit007.jpg" and "kk-a0021.jpg" from an Internet site located in Boston. Id. at 391-98. He also indicated that files would not be transferred via the Internet accidentally—in other words, the user would know that he or she was getting a file, although they might not know what the file contained. Id. at 402.

Finally, Dr. Nancy Inhofe, a pediatrician, who had extensive experience using a scientific method of determining the age of a child and who had worked in clinics for sexually abused children, testified for the prosecution that the children pictured in the two files charged were younger than about age eleven. Id. at 414-19, 426-28. Dr. Inhofe also testified that the individuals portrayed in the other images and videos shown to the jury were children. Id. at 429-32.

Simpson centered his defense on differences in the files that were located on the seized computer and the files upon which the indictment was based. Simpson advanced his defense by cross-examining the prosecution's witnesses and by introducing the testimony of Charles Bass, the president of a computer manufacturer and an Internet provider. See id. at 451-53. Simpson showed that the two files upon which the indictment was based were not located on the seized

computer where the prosecution alleged he saved them after downloading them. See, e.g. , id. at 304, 454-57. The indictment alleged that the files had the following path and file specifications: C:\NEWFTP\doit007.jpg and C:\NEWFTP\kk-a0021.jpg, but the seized computer had files located instead at C:\OLDMAIL\SERIES\DOIT\ DOIT007.JPG and C:\OLDMAIL\SERIES\KK\ KK_A0021.JPG. Simpson pointed out that files with the same name could have totally different contents if they are located in different directories and that therefore, the files upon which the indictment was based and the files actually on the seized computer could have had different content. Id. at 305-08, 458-60, 466. One of the files also had a hyphen instead of an underscore and the file names were capitalized, which Simpson argued meant the files were different. Id. at 318-19, 459-62.

Moreover, Simpson introduced evidence that the two files located on the seized computer had date stamps which were prior to the date on which the government alleged the files were transferred in interstate commerce via the Internet and which the seized computer recorded on the ftp log. See, e.g. , id. at 312-25, 365, 457-59. Thus, Simpson attempted to prove that there was no way to be certain that the files transferred via the Internet were the same ones that were located on the seized computer and contained child pornography. Simpson argued that those files on the seized computer could have been transferred there using a

floppy disk and thus no interstate commerce had occurred, or even that someone other than Simpson had put the files on the computer.     See, e.g. , id. at 368-69, 403, 411-12.  In addition, Simpson attempted to show that the downloading of the two charged files could have been done by mistake or that he did not have the required intent to receive child pornography.     Id. at 322-27, 371-72, 408-09;   see also id. at 437-38, 440, 523-26.

Simpson moved for a directed verdict at the close of the government's case and renewed the motion at the close of its case.  The court denied both motions.  On May 29, 1997, a jury found Simpson guilty on both counts.  Simpson subsequently filed a motion for judgment of acquittal pursuant to Fed. R. Crim. P. 29 based on insufficiency of the evidence, which was denied.  The court sentenced Simpson to 24 months' imprisonment, three years' supervised release, and a $6,000 fine.  Simpson appeals.

## II.  DISCUSSION

### A.     Search Warrant

Simpson argues that the district court erred in failing to suppress the evidence seized at his home.  In reviewing the denial of a motion to suppress, we accept the trial court's factual findings unless clearly erroneous and view the evidence in the light most favorable to the government.     See United States v.

Dahlman , 13 F.3d 1391, 1394 (10th Cir. 1993).  The sufficiency of a warrant under the Fourth Amendment is a question of law we review de novo.      Id.

Simpson first argues that the search warrant was invalid because Detective Johnson failed to present sufficient facts to the issuing judge to permit the judge to conclude that the evidence sought met the definition of child pornography under Oklahoma law. [1]  We disagree.

In determining whether probable cause exists to issue a warrant, the issuing judge must decide whether, given the totality of the circumstances, "'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"    United States v. Janus Indus.   , 48 F.3d 1548, 1552 (10th Cir. 1995) (quoting   Illinois v. Gates  , 462 U.S. 213, 238 (1983)).  We afford great deference to the judge's determination and will uphold it as long as the judge had a substantial basis for finding that probable cause existed.      See id. at 1553.

Detective Johnson presented the affidavit to the issuing judge.  He presented to the judge no copies of unlawful materials believed to be in Simpson's possession, nor did he describe in detail the content of those materials. He informed the judge that the material was "child pornography."  The affidavit sought, among other things, "any and all images of child pornography including pictures and computer images."  Appellant's App. Vol. I, Tab 2, Ex. A at 1.  It

---

[1]Child pornography under Oklahoma law is defined at Okla. Stat. tit. 21, § 1021.2.

-9-

further recited that Detective Johnson had received information from FBI Agent Ken Kaminski that Agent Doug Rehman had contacted Simpson over the Internet and "had made a deal with the defendant to send Rehman a computer diskette and thirty dollars through the mail in exchange for a video tape containing scenes of child pornography." Id. at 2. It described the Internet encounter between Rehman and Simpson and indicated that Rehman had been in an Internet chat room designated as "#sexpicshare #%%kidssexpics," and that the transaction to which they had agreed involved Simpson sending to Rehman "a computer diskette containing numerous scenes of prepubescent children under the age of thirteen." Id. The affidavit therefore sought:

> any and all computer diskettes, and all video tapes, any and all print outs concerning any transmission concerning child pornography and the defendant's computer consisting of hard drive, CD drive, monitor, printer, scanner, modem and all other components of the defendant's computer. Affiant also states that there is probable cause to believe that the defendant will be in possession of images of child pornography whether it be photographs or computer images.

Id.

We hold that the judge properly concluded there was probable cause to believe that evidence of unlawful activity—in this case child pornography— would be found. When discussing the validity of warrants which generally authorize the search for evidence of child pornography, courts have acknowledged that such generalized descriptions as "child pornography" are

-10-

adequate to convey to the officer executing the search warrant the nature of the material sought. See, e.g., United States v. Kimbrough, 69 F.3d 723, 727 (5th Cir. 1995); United States v. Layne, 43 F.3d 127, 132-33 (5th Cir. 1995); United States v. Koelling, 992 F.2d 817, 821-22 (8th Cir. 1993). This is so because the words "child pornography" "'need no expert training or experience to clarify their meaning.'" Layne, 43 F.3d at 133 (quoting United States v. Hurt, 808 F.2d 707, 708 (9th Cir. 1987)). While we deal here with the question of whether the judge had sufficient indicia of probable cause to issue a warrant, we think the same general principle applies in that the meaning of the term "child pornography" and its illegality were sufficiently conveyed so that the judge understood what *type* of evidence was required.

We also conclude that the actual information presented in the affidavit and by Detective Johnson satisfied the probable cause standard. The judge was given the following information: the description of an agreement to send a computer diskette with "numerous scenes of prepubescent children under the age of thirteen" in exchange for a videotape containing scenes of child pornography; the information that the agreement had been reached while Simpson was in an Internet chat room designated as "#sexpicshare #%%kidssexpics;" and Detective Johnson's statement of his experience in the area of investigating child

pornography cases. [2] We agree with the district court that, while minimal, the information presented to the judge was sufficient for him to conclude that there was a fair probability that evidence of child pornography would be found. We reach this conclusion noting, as well, the great deference to be afforded the issuing judge's determination.

Simpson next argues that there was insufficient evidence suggesting there was probable cause to believe he actually possessed any illegal materials. As indicated, the affidavit described the agreement to purchase pornographic materials from Agent Rehman and to send to the agent a diskette containing scenes depicting child pornography, but it also recited that the transaction never took place because Simpson was afraid to send such a diskette through the United States mail. We nonetheless hold that there was sufficient evidence from which the magistrate could conclude Simpson possessed illegal materials.

While Simpson makes much of the fact that the agreement occurred anonymously over the Internet, Simpson gave to the agent his real name and street address for the purpose of receiving the videotape. That belies the notion that the proposed transaction was pure fantasy upon which Simpson had no intention of acting. Moreover, the stated reason for reneging on the deal

---

[2]The Supreme Court has said "we have never held that a magistrate must personally view allegedly obscene films prior to issuing a warrant authorizing their seizure." New York v. P.J. Video, Inc., 475 U.S. 868, 874 n.5 (1986).

(Simpson's fear of using the mail to send a diskette containing pornographic materials) is perfectly consistent with his possession of illegal materials, which he feared being discovered if they were transmitted through the mail. Again, given our deferential review of the issuing judge's determination, we conclude there was sufficient probable cause to believe that Simpson possessed illegal materials.

Simpson next challenges the warrant issued, arguing it did not authorize a search of his home, but only of his person. The warrant stated that the property to be seized "is located at, and is now being kept, possessed and on the person of the above named defendant, in Tulsa County, Oklahoma, described as follows: . . . ." Appellant's App. Vol. I, Tab 2, Ex. B at 1. There followed a detailed description of Simpson's house. The warrant then stated the following:

> The affidavits being positive that the described property is on the person of the above named defendant and there being a likelihood that said property is of important probative value.
> YOU ARE THEREFORE COMMANDED . . . to make search of said person, for the described property, and if found to seize the same . . . .

Id. Simpson argues that the warrant only authorized a search of his person, and that a search of his property was beyond the warrant's scope.

"A search is 'confined in scope to particularly described evidence relating to a specific crime for which there is demonstrated probable cause.'" United States v. Robertson, 21 F.3d 1030, 1033 (10th Cir. 1994) (quoting Voss v.

Bergsgaard, 774 F.2d 402, 404 (10th Cir. 1985)). We must therefore determine the scope of the search authorized by the warrant in this case. We hold that the search of Simpson's residence was within the scope of the warrant.

As the district court acknowledged, the warrant in this case could have been clearer. In general, a warrant is sufficiently specific if it "'enables the searcher to reasonably ascertain and identify the things authorized to be seized.'" Robertson, 21 F.3d at 1033 (quoting United States v. Wolfenbarger, 696 F.2d 750, 752 (10th Cir. 1982)). While the warrant at issue stated its belief that the property to be seized "is located at, and is now being kept, possessed and *on the person* of the above named defendant . . . *described as follows*," Appellant's App. Vol. I, Tab 2, Ex. B at 1 (emphasis added), what followed was a detailed description of Simpson's residence.

Moreover, the same officer, Detective Johnson, produced the affidavit and executed the search warrant. His affidavit clearly sought a search warrant to search "persons, premises and/or vehicle." Id. Ex. A at 3. While his affidavit was not physically attached to the warrant nor specifically incorporated into the warrant, and thus cannot cure a lack of particularity, see United States v. Dahlman, 13 F.3d 1391, 1395 (10th Cir. 1993), the affidavit certainly supports the district court's conclusion that Detective Johnson in good faith believed he was obtaining a warrant to search Simpson's residence as well as his person. As

we have said previously, "[t]o call this . . . warrant insufficient would be to ignore the admonition that 'practical accuracy rather than technical precision controls the determination of whether a search warrant adequately describes the place to be searched.'" United States v. Hutchings, 127 F.3d 1255, 1259 (10th Cir. 1997) (quoting United States v. Occhipinti, 998 F.2d 791, 799 (10th Cir. 1993)). Applying such a practical rather than a technical standard to this warrant, we hold that it sufficiently described the places to be searched and included therein Simpson's residence.

Finally, Simpson argues, without citation of any authority, that his computer disks and hard drive are the equivalent of closed containers and that, absent exigent circumstances, the government "was required to obtain a search warrant specifically authorizing their search." Appellant's Br. at 12. We reject this argument. We are aware of no authority finding that computer disks and hard drives are closed containers somehow separate from the computers themselves, and similar warrants authorizing the search of computer systems and components have been upheld. See, e.g., United States v. Lacy, 119 F.3d 742, 745-47 (9th Cir. 1997). Indeed, in Davis v. Gracey, 111 F.3d 1472, 1478-79 (10th Cir. 1997), we upheld the seizure of computer equipment when the warrant only authorized the seizure of "equipment."

**B. Admissibility of Evidence and Testimony**

Simpson argues that the court improperly allowed the government to present certain evidence, which should result in the reversal of his convictions. We review the court's rulings on the admission of evidence for abuse of discretion. United States v. Davis, 40 F.3d 1069, 1073 (10th Cir. 1994).

**1. Admission of Rule 404(b) Evidence**

First, Simpson contends that the district court erred in admitting evidence of other acts. Specifically, he complains that, in addition to the two images upon which the indictment was based, the district court allowed the government to introduce seven still shots of juvenile females, four separate video clips of child pornography, and seven pages of the file directory which related to those images.

Under Fed. R. Evid. 404(b) "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, such evidence may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Id. "Indeed, the rule is one of inclusion, rather than exclusion, unless the evidence is introduced for the impermissible purpose or is unduly prejudicial." United States v. Segien, 114 F.3d 1014, 1022 (10th Cir. 1997), cert. denied, 118 S. Ct. 1310 (1998).

On review, we will affirm the district court's admission of evidence of extrinsic acts if: (1) the prosecution offered the evidence for a proper purpose under Rule 404(b); (2) the evidence was relevant under Rule 401; (3) its probative value was not substantially outweighed by its potential for unfair prejudice under Rule 403; and (4) upon request, the district court gave a proper instruction limiting the jury's consideration of the evidence to the purpose for which it was admitted.   United States v. Wilson  , 107 F.3d 774, 782 (10th Cir. 1997) (citing  Huddleston v. United States  , 485 U.S. 681, 691 (1988)).

In this case, the government sought to introduce the evidence in order to prove that (1) Simpson's possession of child pornography on his computer was not a mistake or accident, and (2) he had knowledge of the nature of the material he was receiving.[3]  See Appellant's App. Vol. I, Tab 4;    see also  id., Tab 24 at 104-05.  On appeal, Simpson does not contend that the evidence was offered for an improper purpose, or that it was not relevant, or that the court failed to give the limiting instructions which he requested.  Rather, Simpson argues that the

---

[3]Simpson clearly attempted to show that the computer files upon which the indictment was based were received by accident or mistake and that he had no knowledge of the contents of those files.  See, e.g., Appellant's App. Vol. III at 322-27, 371-72, 408-09; see also id. at 437-38, 440, 523-26.

probative value was substantially outweighed by the prejudicial effect.[4]

Appellant's Br. at 14.

In United States v. Garot, 801 F.2d 1241 (10th Cir. 1986), we considered and rejected a similar argument. Noting that defendants under a child pornography charge unavoidably risk introduction of evidence that would offend the average juror, we concluded that the judge properly admitted the 404(b) evidence after a lengthy in camera inspection and considerable paring. Id. at 1247. Likewise in this case, we find that the district court conducted a special proceeding outside the presence of the jury that resulted in its express limitation as to both the length of time the evidence could be displayed and the number of items which could be introduced.[5] Accordingly, as in Garot, we conclude that the evidence was necessary to prove Simpson's intent and lack of mistake and that the district court did not abuse its discretion in admitting it.

---

[4]In his reply brief, Simpson also argues that the government provided insufficient notice of its intention to use such evidence. Inasmuch as he failed to raise this issue in his opening brief, we need not consider it. Lyons v. Jefferson Bank & Trust, 994 F.2d 716, 724 (10th Cir. 1993).

[5]The district court directed the government that it could display each image for only a second or two. Appellant's App. Vol. II at 259. Moreover, each video lasted from a few seconds to a minute. Id. at 288. Finally, the district court allowed the government to introduce only the seven directory pages which related to the images admitted and charged, id. at 299, and of those, Simpson introduced five pages himself. Id. Vol. III at 308-10.

**2.    Admission of Plaintiff's Exhibit 11 Regarding the Chat Room Discussion**

Simpson next argues that the trial court erred in admitting Plaintiff's Exhibit 11, which is a computer printout of the alleged chat room discussion between Simpson and Detective Rehman, because the government could not identify that the statements attributed to Simpson were in his handwriting, his writing style, or his voice pursuant to Fed. R. Evid. 901(b)(2) - (5).  Appellant's Br. at 15-16.  Therefore, argues Simpson, the evidence was not authenticated and should not have been admitted.  The specific examples of authentication referred to by Simpson are merely illustrative, however, and are not intended as an exclusive enumeration of allowable methods of authentication.    See Fed. R. Evid. 901(b).  Rather, all that is ultimately required is "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed. R. Evid. 901(a).

The evidence introduced at trial clearly satisfies this standard.    In the printout of the chat room discussion, the individual using the identity "Stavron" gave Detective Rehman his name as B. Simpson and his correct street address.  Appellant's App. Vol. II at 160, 197.  The discussion and subsequent e-mail exchanges indicated an e-mail address which belonged to Simpson.    Id. at 163; Vol. III at 382.  And the pages found near the computer in Simpson's home and introduced as evidence as Plaintiff's Exhibit 6 contain a notation of the name,

street address, e-mail address, and telephone number that Detective Rehman gave to the individual in the chat room.     Id. Vol. II at 211.  Based on this evidence, the exhibit was properly authenticated and admitted as evidence.

### 3.    Admission of Plaintiff's Exhibit 6 Containing Written Papers Found Near the Computer

Next, Simpson contends that the court abused its discretion in allowing Detective Walters to read from Exhibit 6, which consisted of 15 pages of handwritten notes found near the seized computer, because the exhibit was irrelevant and inflammatory.  Simpson does not argue that the jury ever viewed the entire document, but only complains that the witness should not have been allowed to read to the jury the following notations: "quicktime Movie Viewer, Quick Time for Windows-shows.mov.files, glviewer.mov., oung151.jpg, young171, enn11.jpg, 11-plseries, 13slut.jpg, 12book.jpg, dadsgirl.jpg, deb, and Stavron."  Appellant's Br. at 17.

The court admitted Exhibit 6 mainly because it contained a notation with the name "FlaHawk" and the name, street address, and e-mail address that Agent Rehman had given the individual in the chat room.     Appellant's App. Vol. II at 211; Vol. III at 447-48.  This evidence supported the government's contention that it was indeed Simpson who conversed in the chat room with Agent Rehman about child pornography and was properly admitted.  The notation "Stavron" also

supports the government's contention that the individual in the chat room who used the code name "Stavron" was actually Simpson.

Considering the record as a whole, we do not think that the other notations that were read by the witness were so inflammatory as to cause undue prejudice. The notations "quicktime Movie Viewer, Quick Time for Windows-shows.mov.files, glviewer.mov." are merely indicative of Simpson's use of or desire to obtain programs capable of viewing video clips, four of which were properly admitted at trial. The other notations are apparently file names, and those that are indicative of sexual content are similar to those properly admitted in Defendant's Exhibits 1, 2, and 3, and Plaintiff's Exhibit 9. We, therefore, conclude that the court did not abuse its discretion in admitting this evidence.

**4.    Agent Rehman's Testimony as Both an Expert and Fact Witness**

Simpson argues that the trial court erred in allowing Detective Rehman to testify for the government as both a factual and an expert witness. Appellant's Br. at 17-18. However, it is not at all clear from the record that Simpson properly raised this objection below. Before the trial court, counsel's comments suggested only that Rehman was not qualified to offer expert testimony; counsel never argued that it was improper for Rehman to testify both as a factual witness and as an expert witness. See Appellant's App. Vol. II at 171 (arguing only that

Rehman had not established his expertise in "forensics and/or the investigation of child pornography . . . or child exploitation").

Because counsel failed to object at trial, or at least objected on grounds not now asserted as error, we review this issue for plain error only. United States v. Markum, 4 F.3d 891, 895 (10th Cir. 1993). We cannot now say that it was plain error for the trial judge to have admitted this testimony, if indeed it was error at all. See, e.g., United States v. Castillo, 77 F.3d 1480, 1499 (5th Cir. 1996) (stating that a witness can be both a factual witness and an expert witness in the same trial); United States v. Rivera, 971 F.2d 876, 888 (2d Cir. 1992) (same); United States v. Catlett, 97 F.3d 565, 571 (D.C. Cir. 1996) (same). In particular, we would find no error here because the jury was informed of Rehman's dual roles when the government did not seek to qualify Rehman as an expert until after he had given his factual testimony and because Rehman was subjected to thorough cross-examination. See United States v. Thomas, 74 F.3d 676, 682-83 (6th Cir. 1996); United States v. Foster, 939 F.2d 445, 453 (7th Cir. 1991).

## C. Sufficiency of the Evidence

Simpson next claims that the evidence was insufficient to support the jury's verdict. Simpson contends that the government did not introduce evidence sufficient to prove one element of the charged crimes—that the defendant

received a visual depiction which was mailed, shipped or transported, by any means including by computer, in interstate or foreign commerce.    See 18 U.S.C. § 2252(a)(2); Appellant's App. Vol. I, Tab 8 at 2. He bases this contention on the fact that the files downloaded by Simpson were not the same pictures that were located on the seized computer and shown to the jury. Appellant's Br. at 20.

In considering a challenge to the sufficiency of evidence, we "review the record de novo and ask only whether, taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt."    United States v. Voss  , 82 F.3d 1521, 1524-25 (10th Cir.) (quotations omitted),     cert. denied , 117 S. Ct. 226 (1996). Although the government's case was based mostly on circumstantial evidence, our review of the record indicates that the evidence was sufficient for the jury to find Simpson guilty. The government presented evidence that Simpson's computer had two files containing images of child pornography. The names of those files were substantially similar to the names of files that were downloaded by Simpson over the Internet. Although the specific files that were downloaded over the Internet had apparently been deleted, the government introduced unrebutted expert testimony that deletion of files obtained via the Internet is common if the computer user finds that he already has a copy of the

file. The fact that a defendant deletes (or destroys) evidence does not eliminate his or her culpability for engaging in the conduct related to that evidence.

**D.    Motion to Continue Trial**

Finally, Simpson contends that the court should have granted a continuance of trial so that his expert witness would have been available to testify. We review the denial of a motion for continuance of trial for abuse of discretion and will find error only if the district court's decision was arbitrary or unreasonable and materially prejudiced the defendant. United States v. McKneely, 69 F.3d 1067, 1076-77 (10th Cir. 1995).

Simpson requested a continuance on May 16, 1997, three days before the trial was scheduled to begin, alleging that new evidence had been discovered that required an examination of Simpson's computer. After the court continued the trial until May 27, 1997, to accommodate the court's schedule, Simpson orally renewed his motion to continue on the day of trial, just prior to the start of the trial. Simpson's attorney told the court that the witness, who is an expert in computer science and the Internet, believes he would be able to determine whether or not any changes have been made to Simpson's computer since it was seized and whether the copy made of Simpson's computer's hard drive is an exact duplicate of the original. Appellant's App. Vol. II at 117-18.

-24-

On appeal, Simpson essentially repeats his allegation that the expert would have been able to determine if any changes had been made, and he adds that the expert could have rebutted the prosecution's expert testimony that the interstate commerce element of the crime was satisfied. Simpson does not assert that the copy was in fact not an exact reproduction of the original, nor does he contend that Simpson's computer's hard drive was altered. He also does not explain how, if in fact any changes were made, the expert's inability to testify as to the changes would have materially prejudiced Simpson's case. In fact, although Simpson's brief on appeal indicates that this expert was to have been Simpson's only witness, our review of the record indicates that Simpson in fact called one witness who testified as to Internet protocols, the transferring of files through the Internet, and the files that were on Simpson's computer. See id. Vol. III at 453-72. This witness testified that he had extensive experience not only in the Internet and in the transferring of files through the Internet, but also that he was involved in the manufacture of computer hardware itself. Id. at 451-53. Counsel for Simpson had the opportunity to view the original computer itself during a break in trial to determine if the CD-ROM copy was different from the original. See id. Vol. II at 265. Counsel stated that the computer appeared the same or similar to the CD-ROM in file setup and withdrew an objection to the government's use of the CD-ROM to show files at trial. Id. at 265-66. We

conclude that Simpson has not shown how he was materially prejudiced by the court's denial of his motion to continue, and therefore, no relief is warranted.

We AFFIRM.

No. 97-5121, United States v. William Riley Simpson.

KELLY, Circuit Judge, concurring.

I concur in the court's opinion, but would affirm the district court's denial of the motion to suppress, insofar as the challenge to probable cause, on narrower grounds. Although the affidavit repeatedly utilized the term "child pornography," it gave no further description such as "sexually explicit conduct involving a minor" that would be encompassed by the Oklahoma statute that prohibited the possession of such material.[1] Given this omission, I agree with the district court that the failure to attach the e-mail conversations between Agent Rehman and Mr.

---

[1] In March 1996, Okla. Stat. tit. 21, § 1021.2 provided:

> Any person who shall procure or cause the participation of any minor under the age of eighteen (18) years in any film, motion picture, videotape, photograph, negative, slide, drawing, painting, play, or performance wherein the minor is engaged in or portrayed, depicted, or represented as engaging in any act of sexual intercourse, in any act of fellatio or cunnilingus, in any act of excretion in the context of sexual activity, in any lewd exhibition of the uncovered genitals in the context of masturbation or other sexual activity, or in any other exhibition of the uncovered genitals having the purpose of sexual stimulation of the viewer, or who knowingly possesses, procures, or manufactures, or causes to be sold or distributed any said materials involving the participation of any minor under the age of eighteen (18) shall be guilty, upon conviction, of a felony and shall be punished by imprisonment for not more than twenty (20) years or by the imposition of a fine of not more than Twenty-five Thousand Dollars ($25,000.00) or by both said fine and imprisonment. The consent of the minor, or of the mother, father, legal guardian, or custodian of the minor to the activity prohibited by this section shall not constitute a defense.

1986 Okla. Sess. Laws, ch. 87, § 2. See generally Schultz v. Oklahoma, 811 P.2d 1322 (Okla. Crim. App. 1991).

Simpson to the affidavit, which clearly indicated the nature and content of the material, "created a close question as to whether the affidavit created adequate probable cause that the evidence sought was child pornography and that the Defendant possessed such material." I Aplt. App., doc. 5 at 5-6 n.2.

The cases relied upon by the court to support the use of the generic term "child pornography" are particularity cases where the issue is whether the warrant adequately limits the discretion of the officer executing it, not whether the affidavit was sufficient to establish probable cause. See United States v. Kimbrough, 69 F.3d 723, 727 (5th Cir. 1995), cert. denied, 517 U.S. 1157 (1996); United States v. Layne, 43 F.3d 127, 132-33 (5th Cir.), cert. denied, 514 U.S. 1077 (1995); United States v. Koelling, 992 F.2d 817, 821-22 (8th Cir. 1993); United States v. Hurt, 808 F.2d 707, 708 (9th Cir.), cert. denied, 484 U.S. 816 (1987). The particularity requirement insures that a search supported by probable cause will be adequately confined to specific areas and things, and not become a general search. See Maryland v. Garrison, 480 U.S. 79, 84 (1987). Be that as it may, the warrants in three of the cases relied upon by the court contained more than the term "child pornography." See Kimbrough, 69 F.3d at 727 ("a minor engaging in sexually explicit conduct"); Koelling, 992 F.2d at 820 ("'minors engaged in sexually explicit conduct'"); Hurt, 808 F.2d at 708 ("'minors . . . engaged in sexually explicit activity'"). While I agree with the court that a

judicial officer is not required to view obscene films, Ct. Op. at 12 n.2 (quoting

New York v. P.J. Video, Inc., 475 U.S. 868, 874 n.5 (1986)), in the interest of

completeness, the Supreme Court thereafter said "we think that a reasonably

specific affidavit describing the content of a film generally provides an adequate

basis for the magistrate to determine whether there is probable cause to believe

that the film is obscene, and whether a warrant . . . should issue." P.J. Video, 475

U.S. at 874 n.5.

It is not enough that the law enforcement officer be satisfied that "child

pornography" is involved.

> The point of the Fourth Amendment, which often is not
> grasped by zealous officers, is not that it denies law enforcement the
> support of the usual inferences which reasonable men draw from
> evidence. Its protection consists in requiring that those inferences be
> drawn by a neutral and detached magistrate instead of being judged
> by the officer engaged in the often competitive enterprise of ferreting
> out crime.

Johnson v. United States, 333 U.S. 10, 13-14 (1948). Some brief explanation of

the content allows the judicial officer to draw the necessary inferences necessary

to conclude whether "there is a fair probability that contraband or evidence of a

crime will be found in a particular place." Illinois v. Gates, 462 U.S. 213, 238

(1983).

We view the affidavit and warrant against a backdrop of applicable state

law, and here the warrant was for "possession of child pornography," an offense

-3-

detailed in Okla. Stat. tit. 21, § 1021.2. Several factors suggest probable cause to believe that the statute had been violated. The affidavit provided a detailed description of the agreement and repeated contacts between Agent Rehman and Mr. Simpson, whereby Mr. Simpson was to send a computer diskette "containing numerous scenes of prepubescent children under under the age of thirteen" and $30.00 in exchange for the videotape. This suggests that Mr. Simpson had a present ability to deliver the images, and distinguishes this case from United States v. Weber, 923 F.2d 1338 (9th Cir. 1990), where the defendant merely ordered the offending material and the affidavit contained boilerplate about the characteristics of offenders. See id. at 1344-46. The venue of the negotiation in this case was "# sexpicshare #%%kidsexpics" which suggests trafficking in the sexual images of minors.

Other factors indicate that Mr. Simpson had guilty knowledge. Most importantly, he had "gotten scared" about the agreement and backed out because "he was afraid to use the U.S. Mail Service to send the . . . diskette." The videotape that was to be sent to him "was to be labeled IRC Demo," so its true nature would be disguised.

Our review of a finding of probable cause is based on the totality of the circumstances, and after according the necessary deference to the state judge's finding, I agree with the court that the necessary substantial basis exists for the

-4-

state judge's finding, despite the lack of specificity concerning the term "child pornography." See Gates, 462 U.S. at 238, 241.