**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 5 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MARIA SOLANO-RODRIGUEZ,

Defendant - Appellant.

No. 97-2348
(D. Ct. No. CR 95-205 HB)
(D. N. Mex.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **BALDOCK**, and **MURPHY**, Circuit Judges.

Defendant-Appellant Maria Solano-Rodriguez appeals from her conviction in federal district court for possession with intent to distribute less than fifty kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). On appeal, she argues that the district court erred in: (1) refusing to allow her proposed expert witness to testify at trial; (2) denying her motion to suppress evidence; (3) denying her motion for a continuance at the beginning of the second

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

day of trial; (4) denying her motion for a mistrial after the introduction of hearsay evidence; and (5) upholding the jury verdict.[1]  We have jurisdiction under 18 U.S.C. § 1291 and affirm.

## I.  Background

On March 15, 1995, Ms. Solano-Rodriguez drove into the United States Border Patrol Checkpoint on Highway 54, between Orogrande and Alamogordo, New Mexico, with two of her daughters.  Border Patrol Agent Joel Sims, working in the primary inspection area, first made contact with defendant, while Border Patrol Agent Manuel Cruz stood approximately six feet behind him for safety purposes.  When Agent Sims questioned Ms. Solano-Rodriguez regarding her citizenship, she produced valid immigration documents.  During this time, Agent Sims did not notice anything unusual about her demeanor.  However, he testified that when he asked Ms. Solano-Rodriguez about her destination, she trembled and became shaky.  Defendant told Agent Sims that she was driving to Alamogordo to pick up her niece.  Agent Sims continued to question defendant about her exact destination within Alamogordo.  Agent Sims testified that one of the children

---

[1] In support of these claims, defendant's counsel filed an opening brief that did not comply with this court's rules in effect at the time the brief was filed.  Specifically, counsel used roman numerals rather than page numbers during its statement of jurisdiction, statement of the issues, and statement of the case in an apparent attempt to exceed the fifty page limit without leave of this court.  See Fed. R. App. P. 28(g), 10th Cir. R. 28.3.  Although we address defendant's claims, we admonish defense counsel for its failure to adhere to this court's rules.

responded that the niece lived near a school.  He repeated his question, directing it to Ms. Solano-Rodriguez, and testified that she responded that she would have to stop at a gas station and call her niece.  At that point, Agent Sims stated that he became suspicious because she seemed increasingly nervous and could not pin-point her destination.  Agent Sims also testified that in his past experience with narcotics transportation, the person transporting the narcotics often gives a general destination but is unable to provide a specific location, such as an address.  He therefore asked for her consent to walk a border patrol canine around her car.  He testified that she consented, and he directed her to the secondary inspection area.

Agent Sims testified that his initial conversation with defendant occurred in English.  He stated that he begins every checkpoint encounter in English, switching to Spanish if it appears that a person does not understand him.  Although unable to translate words such as "rocker panel" and "trapdoor" at trial, Agent Sims has passed the Spanish tests required of all Border Patrol agents.  Agent Sims did not believe that Ms. Solano-Rodriguez had any trouble understanding his English because she provided appropriate answers to his questions.

Agent Cruz, who was standing a few feet behind Agent Sims during his initial encounter with defendant, also testified that the conversation between

Agents Sims and Ms. Solano-Rodriguez occurred in English. He claimed that he clearly heard Agent Sims speaking in English and that defendant replied in English. However, he could not hear every word nor remember the exact words she used. Agent Cruz further testified that defendant appeared ruffled and uncertain in her responses when questioned about the exact location she was to meet her niece and that she consented to the dog walking around the vehicle.

The defense's version of the events differs dramatically. Ms. Solano-Rodriguez testified that upon arriving at a checkpoint, she always showed her resident alien card. She further asserted that she does not speak English and asked her daughter to translate Agent Sims' questions. Upon her daughter telling her that Agent Sims asked about their destination, she instructed her daughter to tell him that they were driving to Alamogordo to pick up a niece at the bus depot. Her daughter then responded to Agent Sims in English. At this point, defendant testified that she asked her daughter to request that Agent Sims get an agent who spoke Spanish. Agent Sims brought over Agent Cruz, who asked her to move her car to the secondary area and get out of the vehicle. Ms. Solano-Rodriguez claims that neither she nor her daughters ever told the agents that the niece lived near a school or that she needed to go to a gas station to call her. She also testified she never spoke to either agent in English.

At the secondary inspection site, Agent Sims' canine alerted to the

floorboard on the driver's side of Ms. Solano-Rodriguez's car. Agent Sims opened the driver's side door and noticed that the floorboard appeared raised. After pulling the carpet away, he found eighty-one pounds of marijuana under five trapdoors. Later, prior to selling the car at auction, authorities found another twenty pounds concealed in the rocker panel of the car. Border Patrol Agent Susan Sanchez testified that the marijuana appeared fresh, indicating that it had not been in the vehicle for a long period of time.

Ms. Solano-Rodriguez testified that she did not know the car contained marijuana. According to her, she purchased the car for $700 from a man named Manuel, whom she met in a bar. However, she could not remember the name of the bar nor Manuel's last name. One of her daughters testified that she saw Manuel come to the house with the car before her mother bought it and knew that her mother and older sister were saving money for a car.

On April 4, 1995, a federal grand jury in the District of New Mexico returned an indictment charging defendant with one count of possession with intent to distribute less than fifty kilograms of marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). She pled not guilty on April 21, 1995. On June 19, 1995, defendant filed a motion to suppress statements and physical evidence, which the court denied after a hearing.

On September 7, 1995, the United States filed a motion in limine objecting

to the proposed testimony of defendant's expert witness, Dr. Daniel Villa, to which defense responded on September 14. The first jury trial in this case began on September 18, 1995. During the trial, the district court refused to allow Dr. Villa to testify after listening to a proffer of his proposed testimony. At the conclusion of the trial on September 19, 1995, the court entered an order for a mistrial as a result of the jury's inability to reach a verdict.

Ms. Solano-Rodriguez's second trial commenced on January 9, 1996. During the course of this trial, the court again refused to allow Dr. Villa to testify and again denied the defense's renewed motion to suppress the evidence seized at the checkpoint. On January 10, 1996, the second and final day of defendant's trial, defendant requested a continuance to enable a witness who had missed her flight to New Mexico to testify. The court denied this motion. At the conclusion of the trial, the jury returned a guilty verdict. Ms. Solano-Rodriguez filed a motion for judgment of acquittal or for a new trial on January 17, 1996, which the court denied. On September 24, 1997, the court sentenced Ms. Solano-Rodriguez to thirty-three months imprisonment and two years of supervised release.

## II. Discussion

### A. Expert Testimony

Ms. Solano-Rodriguez argues that the district court erred in failing to admit the testimony of Dr. Daniel Villa, a proposed linguistics expert. She asserts that

the district court should have allowed Dr. Villa to testify that Agent Sims could not speak enough Spanish to hold a basic conversation and that Ms. Solano-Rodriguez could not conduct a basic conversation in English. The "district court has broad discretion in determining whether or not to admit expert testimony, and we review a decision to admit or deny such testimony only for abuse of discretion." Orth v. Emerson Elec. Co., 980 F.2d 632, 637 (10th Cir. 1992); see also United States v. Rice, 52 F.3d 843, 847 (10th Cir. 1995). "An abuse of discretion occurs only when the trial court based its decision on an erroneous conclusion of law or where there is no rational basis in the evidence for the ruling." Wang v. Hsu, 919 F.2d 130, 130 (10th Cir. 1990) (quoting In re Coordinated Pretrial Proceedings in Petroleum Prod. Antitrust Litig., 669 F.2d 620, 623 (10th Cir. 1982)). Based upon our review of the record, we find that the district court had valid and legitimate reasons for its decision not to permit Dr. Villa to testify.[2]

The record reveals that the district court likely had concerns about the reliability of Dr. Villa's testimony. It also apparently feared the testimony would

---

[2] Because Dr. Villa does not offer "testimony based upon a particular [scientific] methodology or technique," Compton v. Subaru of Am., Inc., 82 F.3d 1513, 1519 (10th Cir. 1996), the Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), factors do not enter the analysis, see id. at 1518. "[A]pplication of the Daubert factors is unwarranted in cases where expert testimony is based solely upon experience or training." Id.

encompass material that would not "assist the trier of fact to understand the evidence or to determine a fact in issue," Fed. R. Evid. 702, or might even mislead the jury or confuse the issues, see Fed. R. Evid. 403 (permitting court to exclude relevant evidence if "its probative value is substantially outweighed by the danger of . . . misleading the jury"). Thus, we hold that the district court did not abuse its discretion in refusing to allow defendant's expert to testify.

**B. Suppression of Evidence**

Ms. Solano-Rodriguez also argues that the evidence presented at her trial, including the proffer of the defense expert Dr. Villa, establishes that the court should have granted her renewed motion to suppress. "When reviewing a district court's denial of a motion to suppress, we consider the totality of the circumstances and view the evidence in a light most favorable to the government." United States v. Villa-Chaparro, 115 F.3d 797, 800-01 (10th Cir. 1997), cert. denied, 118 S. Ct. 326 (1997). However, the ultimate determination of reasonableness under the Fourth Amendment is a question of law which we review de novo. See id.

The Fourth Amendment protects individuals against unreasonable searches and seizures. See U.S. Const. amend IV. Although the stop of a vehicle at a fixed border patrol checkpoint constitutes a "seizure" within the meaning of the Fourth Amendment, see United States v. Galindo-Gonzales, 142 F.3d 1217, 1221

(10th Cir. 1998), border patrol agents may briefly detain and question a person at fixed checkpoints without any individualized suspicion that the person is engaged in criminal activity without violating the Fourth Amendment, see United States v. Martinez-Fuerte, 428 U.S. 543, 562 (1976); United States v. Massie, 65 F.3d 843, 847 (10th Cir. 1995).  "The principle protection of Fourth Amendment rights at checkpoints lies in appropriate limitations on the scope of the stop." Martinez-Fuerte, 428 U.S. at 566-67; see also United States v. Rascon-Ortiz, 994 F.2d 749, 752 (10th Cir. 1993).  "A routine checkpoint stop must be brief and unintrusive."  Rascon-Ortiz, 994 F.2d at 752.  During a routine fixed-checkpoint stop, border patrol agents may inquire into an individual's citizenship or immigration status and request documentation.  See Massie, 65 F.3d at 847-48. They may also may make a cursory visual inspection of the vehicle and may briefly question an individual "concerning such things as vehicle ownership, cargo, destination, and travel plans," provided that such questions are "reasonably related to the agent's duty to prevent the unauthorized entry of individuals into this country and to prevent the smuggling of contraband."  Rascon-Ortiz, 994 F.3d at 752; accord Massie, 65 F.3d at 848.

"Further detention of an individual beyond the scope of a routine checkpoint stop must be based on reasonable suspicion, consent, or probable cause."  Massie, 65 F.3d at 848; accord Rascon-Ortiz, 994 F.2d at 752.  Although

a cursory visual inspection is permissible as part of a routine checkpoint stop, agents may not search stopped vehicles in the absence of probable cause or consent. See Rascon-Ortiz, 994 F.2d at 754.

Viewing the evidence in the light most favorable to the government, we accept the version of the events related by Agents Sims and Cruz, and find that the facts before the district court adequately support its decision to deny defendant's motion to suppress. Agent Sims' initial questioning regarding defendant's alienage and destination was within the scope of a routine border checkpoint stop. Furthermore, the combination of Ms. Solano-Rodriguez's nervousness and vague answers as to her precise destination, which Agent Sims testified that in his experience often occurred when a person was transporting narcotics, constitutes a sufficient basis for Agent Sims to detain her further while he requested her permission for a drug-detecting canine to walk around her car. Ms. Solano-Rodriguez consented to the canine inspection, making further justification for her detention during this inspection unnecessary. After the dog alerted to the floorboard of Ms. Solano-Rodriguez's car, the border patrol agents had probable cause to detain her and search the vehicle. See Massie, 65 F.3d at 849. Therefore, we hold that the border patrol agents did not violate Ms. Solano-Rodriguez's Fourth Amendment rights.

## C. Motion for Continuance

At the beginning of the second and final day of trial, Ms. Solano-Rodriguez requested a continuance because Norma Olivas, a witness scheduled to arrive in New Mexico from Denver, Colorado the previous night, had missed her flight. "We review the denial of a motion for continuance of trial for abuse of discretion and will find error only if the district court's decision was arbitrary or unreasonable and materially prejudiced the defendant." United States v. Simpson, 152 F.3d 1241, 1251 (10th Cir. 1998); see also, e.g., Gust v. Jones, 162 F.3d 587, 598 (10th Cir. 1998). We find no abuse of discretion in this case.

At the time of defendant's arrest, she had a piece of paper with various first names, telephone numbers, cellular phone numbers, beeper numbers, and a Colorado address in her purse. On redirect, Agent Sanchez testified:

> By themselves, [the numbers] wouldn't mean anything, but based on experience and having had involvement in numerous narcotics cases, cellular phone numbers are classic things used in the transportation of narcotics, because it helps the smugglers stay in contact, constant, continuous contact, with the person carrying their narcotics for them. . . . [T]his is large investment. . . . Denver, Colorado, is a city we come across with where these narcotics loads are destined to. So, yeah, all of these things by themselves don't mean anything, but the combination of them are very significant to me, because I have had numerous experiences with narcotics cases and seeing these things involved in narcotics cases.

R., Volume VI at 177-78. The government entered the paper containing the numbers into evidence as an exhibit.

Defense counsel admits that she may have elicited much of this damaging

information during cross examination, but, at the time, she believed that Ms. Olivas would arrive to testify. Ms. Olivas would have testified that the numbers belonged to family and friends, rebutting the government's inference that the numbers were drug-related. However, Ms. Olivas missed her flight, the last one from Denver for the evening, making her unavailable to testify. Defendant requested a continuance, but the district court denied the motion stating, "I do not think it's reasonable to continue this case at this point to get a witness who could have or should have been obtained and brought here in a timely fashion." R., Volume VI at 290.

Here, the district court did not act unreasonably nor arbitrarily in denying defendant's motion for a continuance, nor did the court's decision materially prejudice the defendant. The jury members, court, and government had already assembled and prepared for the second and final day of trial. Ms. Olivas' testimony would merely have reiterated that the telephone and beeper numbers belonged to family and friends, not drug carriers. Defendant and her daughter, Ms. Madrid, had already provided such testimony. Thus, we find that the court did not abuse its discretion in denying the motion for a continuance.

**D. Motion for Mistrial**

During defendant's trial, government witness David Black testified that he had learned that a woman named Maria Solano and two young children had stayed

at the Townsman Motel in Alamogordo the night before Ms. Solano-Rodriguez's arrest. This testimony contradicted defendant's claim that she had no prearranged plan to go to Alamogordo before her niece called the day of her arrest. The district court sustained this objection on hearsay grounds and instructed the jury to disregard the statement. The court denied defendant's request for a mistrial. On appeal, defendant argues that this remark "was so highly prejudicial as to be incurable by the trial court's admonition. Appellant's due process rights were violated by the improper evidence and it was error not to grant Appellant's motion for a new trial." Appellant's Br. at 48. We disagree.

Absent a clear abuse of discretion, we will not disturb a ruling on a motion for a mistrial. See United States v. Brooks, 161 F.3d 1240, 1245 (10th Cir. 1998); United States v. Blaze, 143 F.3d 585, 594 (10th Cir. 1998). A new trial is warranted only when it cannot be said "with reasonable certainty that the reference to [inadmissable evidence] had but very slight effect on the verdict of the jury." United States v. Joe, 8 F.3d 1488, 1498 (10th Cir. 1993) (internal quotation marks and citations omitted). In this case, the objectionable reference constitutes an isolated comment in a two day trial, and the district court immediately gave a curative instruction to the jury. An instruction to ignore the testimony typically cures any alleged prejudice. See United States v. Peveto, 881 F.2d 844, 859 (10th Cir. 1989). We hold that under these circumstances, the

judge's immediate instruction cured any harm that might have arisen from Mr. Black's inadmissible testimony.  The district court did not abuse its discretion when it denied defendant's motion for a mistrial.  Cf. Joe, 8 F.3d at 1498 (finding no abuse of discretion where inadmissible testimony consisted of "a single isolated occurrence" and "the trial judge gave an immediate curative instruction").

**E.  Sufficiency of Evidence**

Finally, Ms. Solano-Rodriguez argues on appeal that there exists insufficient evidence to support the jury's verdict.  In evaluating this claim, we "review the record de novo and ask only whether, taking the evidence -- both direct and circumstantial, together with the reasonable inferences to be drawn therefrom -- in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt."  United States v. Voss, 82 F.3d 1521, 1524-25 (10th Cir. 1996) (internal quotation marks and citations omitted); accord United States v. Simpson, 152 F.3d 1241, 1251 (10th Cir. 1998).  After carefully reviewing the record, we hold that sufficient evidence

existed upon which a reasonable jury could convict defendant.

In conclusion, we AFFIRM the district court on all issues raised.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Circuit Judge