**UNITED STATES COURT OF APPEALS**
**TENTH CIRCUIT**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80257**
**(303) 844-3157**

Patrick J.  Fisher, Jr.                                                                                   Elisabeth A. Shumaker
        Clerk                                                                                                      Chief Deputy Clerk

December 1, 2000

**TO:**   ALL RECIPIENTS OF THE OPINION

**RE:**   00-4025, *United States v. Juan Ortega-Jimenez*; *Armando Ortega-Jimenez*
          Filed on November 22, 2000

The court's slip opinion contains a clerical error on page 7, footnote two, second sentence of the footnote.  The reference to the "good faith exception" is deleted from the sentence.  The corrected footnote now reads as follows:

The district court also rejected the government's arguments that the search was a valid search incident to arrest and that the keys inevitably would have been discovered.  Because we find that the warrant authorized the search of the defendants and the white pickup truck, we need not address these issues.

A copy of the corrected page 7 is attached.

Sincerely,

Patrick Fisher, Clerk of Court

By:
       Keith Nelson
       Deputy Clerk

encl.

**F I L E D**

United States Court of Appeals
Tenth Circuit

NOV 22 2000

PATRICK FISHER
Clerk

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

JUAN ORTEGA-JIMENEZ;
ARMANDO ORTEGA-JIMENEZ,

Defendants - Appellees.

No. 00-4025

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D. Ct. No. 98-CR-395-W)**

---

Richard D. McKelvie, Assistant United States Attorney (Paul M. Warner, United States Attorney, with him on the brief), Office of the United States Attorney, Salt Lake City, Utah, for Plaintiff-Appellant.

Dana M. Facemyer, Provo, Utah, for Appellee Armando Ortega-Jimenez, and Deloy M. Sallenback, Provo, Utah, for Appellee Juan Ortega-Jimenez.

---

Before **TACHA** and **PORFILIO**, Circuit Judges, and **KANE**,[*] District Judge.

---

**TACHA**, Circuit Judge.

---

[*]The Honorable John L. Kane, Jr., Senior District Judge for the District of Colorado, sitting by designation.

The United States appeals the district court's order suppressing evidence. We exercise jurisdiction pursuant to 18 U.S.C. § 3731 and reverse and remand.

## I. Facts

The facts in this case are largely undisputed. In 1998, Detective Rich Ferguson was engaged in a narcotics investigation focused on Juan Ortega-Jimenez.[1] On July 30, 1998, Detective Ferguson received a tip from a confidential informant that Juan was using a particular storage unit to store and distribute marijuana and other controlled substances. Based on that information, Detective Ferguson arranged for a K-9 unit trained in narcotics detection to be exposed to storage unit number ninety-seven. The dog sniffed six different storage units but alerted officers only to unit number ninety-seven.

As a result, Detective Ferguson began drafting an affidavit for a search warrant to search storage unit number ninety-seven. He arranged for Detectives Knowles and Halladay to watch the storage unit while he was drafting the affidavit to ensure that no one entered the unit or removed items from it prior to the execution of the warrant. Detectives Knowles and Halladay were familiar with the investigation and were informed that a large quantity of drugs was in storage unit number ninety-seven, that a dog had alerted officers to that unit, and

---

[1]Because defendants Juan Ortega-Jimenez and Armando Ortega-Jimenez are brothers and share the same last name, we will refer to them by their first names.

that the unit was being used by Juan Ortega-Jimenez. They were also aware that Juan was an illegal alien and subject to arrest.

The Detectives began their surveillance at approximately 11:00 p.m. They were sitting about 300 feet away from storage unit number ninety-seven near the east exit from the storage units on the hood of an unmarked police car. They were wearing tee-shirts with a "Police" insignia on the left breast and back and/or police windbreakers. At approximately 11:30, the Detectives observed a white pickup truck enter through the west entrance and proceed directly to unit number ninety-seven. The white pickup stopped directly in front of unit number ninety-seven in a manner that allowed the headlights to shine directly onto the door of the unit.

The Detectives testified that, within seconds of approaching unit number ninety-seven, the driver of the white pickup truck appeared to notice them. The white pickup immediately backed out and proceeded through the east exit in a hurried manner. The Detectives got inside their car. At that point, the pickup passed their car and the Detectives could see that there were two occupants. Detective Knowles recognized the passenger as Juan Ortega-Jimenez.

The Detectives pursued and stopped the vehicle approximately two blocks from the storage units. Detective Halladay testified that the reason for stopping Juan at that time was Juan's illegal entry status. The Detectives obtained

identification from the driver of the pickup truck, later identified as Juan's brother Armando, and from Juan. After receiving the identification, Detective Halladay returned to the police vehicle to run routine checks. During this time, Detective Halladay called Detective Ferguson who advised that Armando, like Juan, was an illegal alien subject to arrest. Detective Ferguson instructed the Detectives to use caution because he had reason to believe that there might be a weapon inside the pickup truck. He further instructed the Detectives to move Juan, Armando, and the white pickup truck back to storage unit number ninety-seven and to wait for him to arrive with the warrant.

After receiving this information, the Detectives conducted what they described as a <u>Terry</u> search of Juan, Armando, and the pickup truck. They then placed Juan and Armando in custody, handcuffed them, and seated them on the curb. The Detectives found no weapons on either of the defendants or in the truck. During the <u>Terry</u> search, however, Detective Knowles took some keys from Juan's pocket and placed them on the seat of the white pickup truck.

Approximately fifteen minutes later, at the Detectives' request, a local police officer arrived at the scene. Detectives Halladay and Knowles informed the police officer that a search warrant was going to be executed on storage unit number ninety-seven and asked the officer to transport Juan and Armando back to the storage unit and wait for the warrant to arrive. Detective Knowles then drove

the white pickup back to the storage unit where he left the keys in the ignition. Upon their return to the storage unit, Juan and Armando remained in the back of the police car while Detectives Halladay and Knowles waited outside the police car.

Meanwhile, Detective Ferguson, who was still drafting the affidavit, was notified that Juan and Armando had been taken into custody. Ferguson included information about the stop and detention in his affidavit. The affidavit states:

> [W]hile officers were holding surveillance on the above mentioned storage unit, Juan Jimenez and his brother, Armando, pulled up in front of storage unit #97 and were proceeding to get out of their vehicle. When they observed police officers watching the storage unit, they then attempted to flee from the scene and are currently being detained by police officers.

Ferguson Aff. ¶ 7. Detective Ferguson's affidavit further states:

> [I]t is your affiant's experience that individuals secreting illicit narcotics and contraband in storage units often have these storage units rented in a fictitious person's name. That failure to <u>search the persons and vehicle being occupied by Juan and his brother Armando, a white pickup truck,</u> will result in officers missing valuable evidence such as correspondence <u>and keys</u> to the storage units that will show possession or use.

Ferguson Aff. ¶ 8 (emphasis added). The affidavit was signed by Detective Ferguson and the judge. At 12:30 a.m., the judge issued a search warrant authorizing the search of storage unit number ninety-seven "along with the persons and vehicles of individuals present and arriving" at the storage unit. Detective Ferguson's affidavit was neither attached to nor specifically

incorporated in the warrant.

At approximately 12:50 a.m., Detective Ferguson arrived with the search warrant and executed it. The Detectives picked the two locks on the storage unit and opened it. The search of the storage unit yielded a large quantity of controlled substances and paraphernalia associated with the distribution of controlled substances. Following the search of the storage unit, the Detectives conducted a further search of Juan, Armando, and the white pickup truck. They found no evidence on the person of either Juan or Armando. Their search of the pickup truck, however, yielded keys that fit the locks on the storage unit.

The defendants moved to suppress the keys. The district court upheld the investigative detention of the defendants. However, the court ordered the suppression of the keys on the basis that the warrant, which was signed at 12:30 a.m., only authorized the search of persons and vehicles "present and arriving." The court concluded that, because the defendants had left the storage unit at approximately 11:30 p.m., and since they were at the storage unit only because they had been moved there by police, the defendants could not fairly be considered "present" or "arriving." As a result, the district court held that the warrant did not authorize the search of the defendants or their truck. Therefore,

the court ordered the suppression of the keys.[2]  The United States filed this interlocutory appeal.

## II.  Discussion

The scope of a warrant is a question of law which we review de novo. United States v. Soussi, 29 F.3d 565, 568 (10th Cir. 1994).  When interpreting warrants, this court has adopted a standard of "practical accuracy rather than technical precision."  United States v. Simpson, 152 F.3d 1241, 1248 (10th Cir. 1998) (citation and internal quotations omitted).

Simpson addressed whether a particular warrant was invalid by being insufficiently particular.  This court looked to the affidavit to clarify the meaning of the warrant, id., even though an affidavit not specifically incorporated in or physically attached to a warrant cannot cure a lack of particularity, see, e.g., United States v. Dahlman, 13 F.3d 1391, 1395 (10th Cir. 1993).  Important to the holding of Simpson was the fact that the same officer both produced the affidavit and executed the warrant.  Simpson, 152 F.3d at 1248.  Because the affidavit's terms were clear, and because the affiant/executing officer knew those terms, the

---

[2]The district court also rejected the government's arguments that the search was a valid search incident to arrest and that the keys inevitably would have been discovered.  Because we find that the warrant authorized the search of the defendants and the white pickup truck, we need not address these issues.

court concluded that the warrant was sufficiently particular.  Id.

It would be anomalous to permit an officer's knowledge of the terms of the affidavit to cure a lack of particularity on the face of a warrant but not permit the officer's knowledge to clarify the practical meaning of a term in a facially valid warrant.  Because an affidavit can be used to demonstrate that a warrant is not constitutionally invalid for lack of particularity when the same officer produces the affidavit and executes the warrant, an affidavit also may be used to clarify with "practical accuracy" the meaning of a disputed term in a warrant when the same person is both affiant and executing officer.

At issue in this case is the meaning of the term "present" in the warrant. While "present" in a warrant might technically be interpreted to mean those who are voluntarily present at the time the warrant is signed, technical precision is not the standard.  We must determine the practical meaning of the term "present."

In his affidavit, Detective Ferguson clearly mentioned the defendants by name, explained that officers had seen them drive up to the storage unit, and stated that they were being detained at the storage unit by police officers at the time the affidavit was signed.  He further described the necessity of searching specifically the defendants and their vehicle for evidence of possession or use of the storage unit, particularly correspondence or keys.  Given the specificity of the affidavit, the judge surely knew that the defendants were present at the storage

unit at the time the warrant was issued. A practical reading of the term "present" must include those the judge knew actually were present at that time. We find that the search of the truck and the defendants was within the scope of the warrant.[3] Therefore, we hold that the keys are admissible.

Accordingly, we REVERSE the suppression order of the district court and REMAND for further proceedings consistent with this opinion.

---

[3]Because we find that the warrant authorized the search of both the persons of the defendants and their vehicle, we do not address the permissibility of removing the keys from Juan's pocket during the Terry search. The warrant authorized the search of both Juan and the truck. Whether the keys should have remained in Juan's pocket or were permissibly placed in the truck, the Detectives inevitably would have discovered them. See, e.g., United States v. Souza, 223 F.3d 1197, 1202 (10th Cir. 2000) ("[T]he exclusionary rule is inapplicable if the evidence inevitably would have been discovered by lawful means.").